GRUBBS *v.* STATE OF INDIANA.

[No. 969S195. Filed December 21, 1970. No petition for rehearing filed.]

*Robert J. Fair,* of Princeton, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Hassett,* Deputy Attorney General, for appellee.

DEBRULER, J.—This is an appeal from a conviction in a trial by jury for theft by deception in violation of the Offenses Against Property Act, Acts 1963 (Spec. Sess.), ch. 10, §§ 1 to

13, Burns Ind. Stat. Ann. §§ 10-3028 to 10-3041. The appellant was sentenced to the Indiana State Farm for a term of one (1) year and fined Five Hundred Dollars ($500.00) and costs.

The appellant was charged in the affidavit with knowingly obtaining "by deception control over the property of the owner, Donald L. Whitehead d/b/a Whitehead Oil Company, to-wit: $10.00 in United States currency, with the intent to permanently deprive the said Donald L. Whitehead d/b/a Whitehead Oil Company of the use and benefit of his said property," and was convicted as an accessory before the fact, since the evidence of the State failed to show that appellant controlled or possessed the money.

According to the State's version of the case the appellant and a companion Miller, on March 15, 1969, engaged in a scheme to cheat an unwary gas station attendant out of ten dollars. On the day in question a car occupied by three men entered the Whitehead Oil Station. One of the occupants, who was not identified specifically at the trial, ordered a dollar's worth of gas. The appellant and Miller got out of the car and went inside the station. Shortly thereafter Miller paid for the gas with a twenty dollar bill. The attendant returned Miller's change to him consisting of a ten dollar bill and nine ones. Miller told the attendant that his wife had given him a bunch of ones the night before and that he would like to have a ten for them and handed the nine ones back to the attendant. The attendant counted the ones and found there were only nine there, whereupon Miller gave him another one and received a ten dollar bill. Just as the attendant was about to put the ones in the cash register Miller suggested that he, the attendant, might need some change and suggested further than the attendant take the ten dollar bill and the ten ones and give Miller the twenty dollar bill, which the luckless attendant did.

During this "transaction" the appellant talked constantly with Miller about a ballgame. The attendant testified that

Miller spoke very rapidly the whole time. At no time did this appellant talk to the attendant. The State argued at trial that the evidence of appellant's conversation with Miller during the "transaction" proved that appellant was aiding in the carrying out of the scheme by drawing the attention of the attendant from the making of change.

As soon as the car occupied by the men pulled out of the station, the attendant realized that he had been shortchanged ten dollars and called the police. The State's evidence further showed that appellant and Miller had made an unsuccessful attempt that same day at another gas station to "transact" this type of business.

During the first part of the trial of this case, the defendant had no lawyer. After the selection of the jury and after the State had rested its case in chief, the defendant employed a lawyer, who immediately entered his appearance, acquainted himself with the testimony of the State's witnesses by listening to the recording machine tapes of the evidence, and made a motion for mistrial on the grounds that much irrelevant, immaterial and highly prejudicial evidence had been brought out by the State and urging that the ends of justice required the declaring of a mistrial. The trial court overruled the motion. The issue here on appeal is whether the trial court committed error in overruling this motion.

The question before us in this appeal is: What is the duty of a trial judge when conducting a criminal trial in which the defendant chooses to act as his own counsel? In the case before us the defendant did not pose a single objection. He perfunctorily cross-examined only one witness. He had no legal training. He was incapable of conducting any semblance of a defense. The prosecutor on the other hand chose to bring out matters which were clearly inadmissible and which would tend to enrage the jury against the accused. That evidence consisted in part of the following testimony of Officer John Ratcliff:

"Q. How long have you been employed as a police officer?

A. Four and a half years.

Q. Did there come a time when you had a special assignment in addition to your duties as a traffic officer?

A. There did. There was.

Q. Can you tell us what your assignment was and who you worked for?

A. The assignment was out of the Chief's office.

Q. What Chief is that?

A. Chief Covert.

Q. All right.

A. And in connection with narcotics.

Q. And did there come a time when you grew a beard and mustache?

A. Sideburns and a mustache.

Q. And when you were working in that capacity, did you have occasion to meet the defendant in this case, Claudie Grubbs?

A. I did.

\* \* \*

Q. Where did you see the defendant, Claudie Grubbs; his brother, William Grubbs, and William J. Miller on that occasion?

A. It was at 904 Southeast Eighth Street, which is their duplex.

Q. Whose duplex?

A. The Grubbs' brothers' duplex is where they resided at the time.

Q. How did you have occasion to be there at their duplex?

A. It was due to the assignment out of the Chief's office.

\* \* \*

Q. I'll ask you whether or not after this particular time you continued to keep company with these two Grubbs brothers and the defendant, Miller, for a period of time?

A. Right. Up to April 23rd.

Q. And then what happened on April 23rd that caused you to not have any occasion to visit their apartment?

A. Then that's when we started the plans, our plans, for the other, as far as the narcotics go. This is when we started working with our Prosecutor to get the warrants and necessary papers and then the next contact was about the 25th, I believe, of April.

Q. Now, did they make any remarks to you on this occasion on March 17th about what they considered this charge to be like up here and what they were really worried about when they got stopped in Gibson County on March 15, 1969?

A. Well, they didn't . . as far as being concerned about this charge up here, they didn't seem to be too bothered by it at that time. It was stated by William Grubbs that they had three test tubes of grass in the car and he said he was concerned about that being in the car . . . marijuana.

*BY THE COURT:*

I don't believe you should go into that, Mr. Marshall. I think that's going too far."

This testimony elicited by the prosecutor as part of his case in chief from the witness Ratcliff was clearly inadmissible as irrelevant. This testimony is totally unrelated to the elements of the offense of which the defendant was charged. The same witness related a general conversation, the content of which supports the State's case only by innuendo and suggestion, and at no time specified who said what to whom, but continually referred only to what "they said". For example the witness testified as follows:

"Q. What else was said besides the fact that one of them indicated he had had this experience as a carnival worker?

A. Well, it was general conversation that they had done this before.

Q. What did they say about what they had done before?

A. Well, when, for specific dates, no, I couldn't give you an answer, but to the fact that yes, this had been done before, they stated they had done this.

Q. What did they say about it?

A. Here again everybody that was in the conversation was talking back and forth and they had talked and had stated that they had done this before at sometime or another. One or two of them had done this in Kentucky, I can remember that from the conversation. As to exactly who it was and where it was, what part of Kentucky, I don't know.

Q. I'm not interested in that particular part, but what did they say? What I'm getting at, how much did they say they had made in a certain period of time?

A. There was figure that was brought up and I remember it because it seemed a little astounding. They said they had made as much as a hundred dollars in a day in shortchanging.

Q. Was there a period when they said they had made a certain amount in a week's time?

A. It was either stated that they did or they could have made a thousand dollars in a week's time."

This testimony is unconnected to any particular individual and an objection on that ground would have been properly sustained.

A trial court cannot sit idly by in a circumstance of this sort. He must actively direct the course of the trial so as to protect the ultimate purpose of that trial which is to bring about a decision by the judge or jury which is based upon relevant and non-hearsay evidence. *Wilson* v. *State* (1943), 222 Ind. 63, 51 N. E. 2d 848. The trial court should not permit the prosecutor to ignore the settled rules of evidence. It would not be consistent with our goal of administering the criminal law fairly for the prosecutor to be permitted to secure the conviction of an accused by the use of tactics which prevent the achievement of a fair and just decision. The trial must remain a trial.

When a judge sits on the trial of a criminal case in which the defendant has chosen to be his own lawyer, he must be especially acute and vigilant in governing the conduct of counsel and witnesses, in order to insure that it does not jump the track and become an inquisition in

which the sole end sought is conviction rather than a decision based upon lawful evidence.

In *Wilson v. State, supra,* this Court said:

"A fair minded judge observing the incompetency of an attorney for the defense would be expected to take more than ordinary care to protect the rights of the accused." 222 Ind. at 82.

In a case such as the one before us the trial judge should warn counsel that his conduct is creating the possibility of a mistrial and should strike irrelevant testimony on his own motion and instruct the jury to disregard it. He should continually bring the fact to the attention of the defendant that important procedural points in the trial have been reached, for instance, the point at which questioning of a prospective juror by the accused has arrived, the point at which cross-examination by the accused has been reached, and the points at which opening and closing statements by the accused have been reached. Only by vigorously assuming this responsibility can there be any assurance that the trial will serve the purposes for which it is held. Of course, this is not to say that where an accused is represented by apparently competent counsel, the trial court may impose his own theories of defense or trial strategies on the defense.

It is true that the trial judge in the case before us did warn the prosecutor at one point that he was going too far. However, this warning came too late and was not accompanied by an instruction to the jury to disregard the irrelevant testimony.

We point out that the record contains no explanation of the reason for the absence of counsel during the first part of the trial. Counsel did appear after the State had rested its case in chief and made the motion for mistrial after having examined the record of the evidence and continued representing the appellant during the remainder of the trial. Although the right to counsel afforded by the Sixth Amendment to the United States Constitution and Art. 1, § 13

of the Indiana Constitution is not squarely in issue before us we point out that a trial court must approach those stages of a proceeding at which fundamental constitutional rights attach with great concern and caution and with an appreciation for the need to make a clear record of what takes place. This Court cannot infer a voluntary and intelligent waiver of such a right from a silent record. *Johnson* v. *Zerbst* (1938), 304 U. S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461. In stating the responsibility of the trial judge in these circumstances the Supreme Court of the United States said:

> "The constitutional right of an accused to be represented by Counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without Counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to Counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record." 304 U. S. at 465.

Finally, we point out that appellant's counsel objected to the trial court's standard instruction defining "accessory before the fact", which objection was overruled by the trial court and the instruction was given. This ruling is also urged as error on this appeal, but we do not reach that issue because of our resolution of the issue raised by the trial court's ruling on appellant's motion for mistrial.

The conviction is reversed and the trial court is ordered to grant appellant a new trial.

Givan, J., concurs; Hunter, C.J. and Jackson, J., concur in result; Arterburn, J., concurs in result with opinion.

### Concurring Opinion

ARTERBURN, J.—I reluctantly concur in the result of the majority opinion. The record shows that this man had two other lawyers employed, who withdrew from the case, and

finally one of the lawyers appeared at the end of the State's testimony. There is no showing that defendant was a pauper. The record is silent as to whether he was informed in accordance with the rules of this Court that he was entitled to a lawyer at taxpayers' expense if he could not pay for one.

When a man of intelligence voluntarily decides to be arraigned and go to trial without a lawyer, the constitution undoubtedly gives him that right. I am afraid from the tenor of the majority opinion that it will be interpreted to hold that a trial judge becomes a lawyer for the defendant who has no lawyer. With this I cannot agree. If true, it would be much better for the defendant in most cases to have the judge trying the case as his lawyer than to have some outside attorney defending him. It takes the judge out of the position of being an impartial presiding officer and gives him a duty to assume a partisan view, looking out at all times for the defendant's interests.

The next step would be to hold that the judge is obligated to introduce certain evidence or subpoena certain witnesses for the defendant where the record appears afterwards to show such would have been helpful to the defendant's interests.

I therefore concur in the result of this opinion, since I feel that the trial judge should have made a very plain record that the defendant waived his right to an attorney and desired voluntarily to go to trial without an attorney. At the same time I recognize a case cannot be unduly delayed by a defendant out on bond who continually changes attorneys and, when the trial date arrives, states that he still desires an attorney but has not been able to find one, as in the case of *Fitzgerald* v. *State* (1970), 254 Ind. 39, 257 N. E. 2d 305, in which I dissented and in which dissent, Givan, J., concurred.

For the reason that the record is not clear in this respect, I concur in the result only of the opinion.

NOTE.—Reported in 265 N. E. 2d 40.