EARL KEITH HALL v. STATE OF INDIANA.

[No. 472A201.  Filed November 8, 1972.]

*Kenneth L. Nunn,* of Bloomington, for appellant.

*Theodore L. Sendak,* Attorney General, *Stephen J. Cuthbert,* Deputy Attorney General.

LOWDERMILK, J.—This criminal action was commenced by way of affidavit against the defendant-appellant, Earl Keith Hall, charging him in Lawrence County, Indiana, with violation of Ind. Ann. Stat. § 10-703, to-wit: Possession of Burglary Tools by a Convict.

The statute which is allegedly violated reads as follows, to-wit:

"10-703. Burglary—Possession of Tools by a Convict.—If any person previously convicted of a felony be found having in his possession any burglary tools or implements with intent to commit the crime of burglary, such person shall be deemed guilty of a felony, and on conviction thereof shall be imprisoned for not less than two [2] years nor more than fourteen [14] years, and the possession of such tools or implements shall be prima facie evidence of the intent to commit burglary."

The affidavit alleged that Earl Keith Hall, late of said county, who was then and there a person who had previously been convicted of a felony, to-wit: "Burglary second degree on February 14, 1966, at Crawfordsville, Indiana, Montgomery

Circuit Court, did then and there unlawfully and feloniously have in his possession burglary tools and implements, to-wit: pinch bar, screw driver, and gloves with intent to commit the crime of burglary contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the State of Indiana."

The defendant-appellant posted a surety bond in the principal amount of $4,000 and was released thereon.

He was told to appear in the Lawrence Circuit Court on August 3, 1970, for arraignment.

On the arraignment date he appeared and informed the court he was unable to secure the services of an attorney and requested a continuance until he could find an attorney. The request was granted and arraignment was re-scheduled for August 17, 1970. The defendant-appellant appeared on that date and requested additional time to employ an attorney. The court granted appellant's request and rescheduled arraignment for September 8, 1970.

The docket sheet does not show any entry for September 8, 1970, but it is presumed a continuance was granted that day. The next entry, being September 21, 1970, shows that appellant was present without counsel and requested additional time within which to find an attorney to represent him. Arraignment was re-scheduled for October 1, 1970.

Appellant appeared on October 1, 1970, before the court and reported he was yet unable to employ an attorney and requested additional time. The court granted appellant's request and rescheduled arraignment for November 2, 1970.

On November 2, 1970, the defendant-appellant appeared before the Judge of the Lawrence Circuit Court and informed the court he was unable to hire an attorney and requested additional time for that purpose. This request was denied by the court, who informed the appellant he would be arraigned at that time. At this time the defendant-appellant was alone

and unadvised by counsel and the court proceeded with the arraignment.

There were several preliminary questions which were asked by the court of the appellant about the appellant's having an attorney. Appellant replied that he had spoken with an attorney about representing him but that he, defendant-appellant, could not raise the money. The appellant further informed the court that his poverty was the major obstacle to hiring this attorney and that if he had $100 the attorney would appear for him. The court did not comment on the appellant's reply, nor did the court inform the appellant that he was entitled to a court appointed attorney free of charge. Neither did the court halt the arraignment proceedings after learning of appellant's poverty, but proceeded to arraign the appellant without the benefit of advice from counsel. The appellant did, however, enter a plea of not guilty, after which the court set the trial date of March 23, 1971.

Prior to entering his plea the defendant did not test the sufficiency of the affidavit by motion to quash. After entering a plea the defendant did not move for a change of venue from the judge, a change of venue from the county, or the production of a list of witnesses and real evidence which the State planned to introduce at the trial.

Thereafter, on March 16, 1971, the defendant-appellant requested a continuance because of his inability to obtain counsel. The request was denied by the court, who did not offer to appoint counsel for appellant. The defendant-appellant then informed the court he was intending to employ one Robert Skinner, a Bedford, Indiana, attorney. The court then informed the appellant that Attorney Skinner was the attorney for the House of Representatives and could not absent himself from the General Assembly and be ready for trial on March 23, 1971; he further suggested to the defendant that he employ other counsel. The court did not offer to appoint counsel for appellant.

On March 16, 1971, defendant-appellant retained Kenneth L. Nunn of Bloomington, Indiana, as counsel.

On March 18, 1971, Mr. Nunn personally appeared before the court and requested a brief continuance in order to prepare for trial, advising the court that he was totally unfamiliar with the case and had been retained only 48 hours earlier and that he was presently engaged in Bloomington in other matters and that he needed more than five days in which to prepare for the trial. Of these five days two were Saturday and Sunday. This motion was also overruled.

On Monday, March 22, 1971, Mr. Nunn appeared in person before the court and filed a motion to withdraw the plea of not guilty, arguing that he wished to file a motion to quash but could not do so as long as the not guilty plea was entered. This motion was overruled.

Counsel then filed a motion to reconsider the motion for continuance which motion was also overruled. Counsel then filed another motion to reconsider the motion for continuance, which motion was overruled. This motion was followed by a written verified motion for change of venue from the judge, alleging bias and prejudice and that the same had only recently been discovered and that the defendant-appellant was without counsel at arraignment and consequently did not know that Rule 12 of the Indiana Rules of Criminal Procedure required a granting of such motion if filed within ten days following arraignment; that, therefore, this motion for change of venue from the judge was timely. This motion the court also overruled.

The next day, the same being March 23, 1971, before the trial began, attorney Nunn appeared before the court and filed a motion to reconsider his motion for change of venue from the judge and alleged bias and prejudice that would prevent the appellant from receiving a fair trial and citing several examples which he claimed was bias and prejudice based upon the conduct of the judge toward the appellant. This motion to reconsider was by the court overruled. Mr. Nunn

also filed a motion to suppress any and all statements made by the defendant while in police custody. A brief hearing was held and the court overruled the motion to suppress. The court then ordered the jury panel to be called and the voire dire commenced.

The trial was completed on March 31, 1971, after which the jury returned its verdict, finding the defendant-appellant guilty of the crime of possession of burglary tools by a convict and found his true age to be 34 years.

The statutory sentence was then passed upon the defendant-appellant.

Thereafter, on June 8, 1971, defendant-appellant timely filed his motion to correct errors, which read, in part, as follows:

> "Comes now the Defendant and files a motion to correct errors and requests this Court for a new trial based upon the following grounds:
>
> "1. Irregularity in the proceedings of the Court, or jury, or for any order of the court or abuse of discretion by which the Defendant was prevented from having a fair trial.
>
>> "a. The court erred by accepting a plea of not guilty while the defendant was without benefit of counsel.
>>
>> "b. The court erred by not offering pauper counsel to the defendant before and during the critical stage of arraignment.
>>
>> "c. The court erred by not informing the defendant of what rights he was waiving as a result of pleading not guilty during his arraignment.
>>
>> "d. The court erred by preventing the defendant from retaining counsel of his choice.
>>
>> "e. * * * f. * * * g. * * * h. * * * i. * * * j. * * * k. * * *
>
> "2. The court and jury's verdict is contrary to law and is not supported by sufficient evidence.
>
>> "a. * * * b. * * *."

For the purpose of this opinion we shall group specifications 1. a, b, c, and d, and treat them together and as one.

The motion to correct errors was overruled by the court on September 28, 1971.

Prior to this, to-wit, on April 9, 1971, defendant-appellant's attorney filed an affidavit with the court setting forth that he was of the opinion that appellant did not receive a fair trial and that the decision should be appealed. He also informed the court that the appellant did not possess means to pay both the costs of the appeal and the attorney fee. This was substantiated by an affidavit, listing in detail his financial resources and requesting pauper counsel for the purpose of prosecuting the appeal.

The Prosecuting Attorney resisted that and later, arrangements were reached with the trial judge whereby the defendant-appellant would pay all the attorney fees necessary to prosecute the appeal while the court would provide a transcript of the trial free of charge.

Defendant-appellant contends that he, being a non-lawyer and having no skill in appreciating the consequences or ramifications of entering a plea and having informed the court that his poverty prevented him from retaining an attorney and further having told the court that he did not wish to proceed without counsel present to advise him and the court's failure to advise defendant-appellant that, despite his poverty, the court appointed counsel was available to advise him was to deny defendant-appellant his constitutionally guaranteed right to counsel.

Defendant-appellant further contends that he was denied Federally guaranteed rights to due process of law and to counsel by the court's failing to advise him that counsel could be appointed by the court.

He further contends that the Fourteenth and Sixth Amendments to the United States Constitution guarantee that an accused has the right to the assistance of counsel at all critical stages of a criminal proceeding and the trial court is under a positive duty to advise the defendant of his right.

Defendant-appellant further contends that he informed the trial judge that his poverty had prevented his retaining counsel to represent him, that he wished to consult counsel before arraignment, and yet the court failed to advise him that court appointed counsel was available. This failure, defendant-appellant contends, is a substantial hardship on defendant-appellant, denying him those rights to due process of law and to the assistance of counsel which are secured by the said Fourteenth and Sixth Amendments to the United States Constitution, and also argues this is a violation of Article I, Section 13 of the Constitution of Indiana, which reads as follows, to-wit:

> "Section 13. Rights of the accused. In all criminal proceedings the accused shall have the right to a public trial, by an impartial jury, in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him; and to have a copy thereof; to meet the witnesses face to face; and to have compulsory process for obtaining witness in his favor."

The State of Indiana contends in its brief that the defendant-appellant at no time before arraignment stated that he was financially unable to employ counsel. Rather, the defendant repeatedly informed the court that he had not yet retained counsel, nor had yet saved enough to retain counsel.

The State's argument is true here, as he did not say in so many words that he was a pauper, poverty stricken, and for that reason could not employ counsel, but defendant-appellant did say that he had to have $100 before he could employ counsel and that he did want to be represented by counsel. This, in our opinion, entitled the defendant to have counsel with him at all steps of the trial, as provided by the Constitution of Indiana, as above set out, and he should have had counsel in court with him when he was arraigned.

This court does not know the financial condition of the defendant-appellant, but this court does know that in many

instances it is a great burden on a man to raise $100 for attorney fees or for any other payment. It goes without saying that a man who has gone three months trying to raise $100 and can't may not be a pauper, yet he is very well poverty stricken. In our opinion, reasonable men might well come to that conclusion.

The State also contends that there comes a point of time when the stated purpose of the defendant in seeking continuances can no longer be considered by the court as credible. They further state that in such case it then becomes the duty of the trial judge to take appropriate action to see that the trial advances at a reasonable pace.

With this we have no fight and agree wholeheartedly with it.

The State's contention is that the judge took the cautious course of action and asked the defendant certain questions before arraignment and having done so did not violate any of the defendant's constitutional rights.

The court did ask the defendant-appellant if he was ready for arraignment, and he answered that he was; he asked if he had an attorney to which he said "No, sir," after which the court told him he would have to ask him some questions.

From the questions set out they are all answered knowledgeably and intelligently. In answer to question number 8:

Question 8: "Are you planning to employ an attorney on your own?"
Answer: "Yes, sir."

Question 10: "When do you expect to make your arrangements with this attorney?"
Answer: "As soon as I pay him, then he will appear for me."

Question 11: "How much time will you require for that?"
Answer: "I have been unable to save up the $100 in the past month so I don't know. It will take a couple of months."

Question 12:    "Right now you are planning to employ your own attorney?"
Answer:         "Yes, sir."

The court then continued with the interrogation, advising the defendant of his right of a trial by jury and his right to subpoena witnesses; he asked the defendant if he was under the influence of alcoholic beverages or narcotic drugs, which he was not; he asked the further questions, as follows:

Question 15:    "Has anybody made any threats or promises to you to induce you to plead one way or the other?"
Answer:         "No, sir."

Question 16:    "Anything you do will be of your own free will and accord?"
Answer:         "Yes, sir."

Question 17:    "Do you now expressly waive your rights to counsel and proceed at this time for arraignment?"
Answer:         "Yes, sir."

At this time the Prosecutor was instructed to read the affidavit to the defendant-appellant, which he did, and to which the defendant-appellant entered a plea of not guilty and in answer to the court's questions pertaining to a jury trial, said that he wanted a jury.

The State relies on the case of *Johnson* v. *Zerbst* (1938), 304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 2d 1461, wherein the court stated:

"While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record."

The State further contends that in the case at bar it is clearly shown that the defendant-appellant did competently and intelligently waive his constitutional right to assistance of counsel at arraignment; Hall had no difficulty in compre-

hending the nature of the proceedings by the questions asked by the trial court.

The defendant-appellant, in answer to the State's contention that *Johnson* v. *Zerbst, supra,* was the applicable standard to be applied in cases of this nature to determine the validity of a defendant's waiver relied upon the case of *Grubbs* v. *State* (1970), 255 Ind. 411, 265 N. E. 2d 40, and used *Johnson* v. *Zerbst, supra,* as its authority for testing the validity of a waiver.

In *Grubbs,* the Supreme Court said that it cannot infer a voluntary and intelligent waiver of the right to counsel from a silent record and cited *Johnson* v. *Zerbst, supra.* The court further said:

> "In stating the responsibility of the trial judge in these circumstances the Supreme Court of the United States said:
> " 'The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record.' 304 U.S. at 465, 58 S. Ct. at 1023."

In the case of *Grimes* v. *State* (1972), 257 Ind. 660, 278 N. E. 2d 271, in an opinion by Justice DeBruler, the question of a defendant's right to assistance of counsel during arraignment leaves nothing to the imagination.

In *Grimes* the defendant was taken before the trial court, where he had no counsel and was interrogated as to his desiring an attorney and he said that he did not wish an attorney and the court went further to determine if he were a pauper and determined that he had $1,000 hospital bill from a broken leg and that he still had a pin in his leg and was unable to work, and had an automobile worth $45 to $50.

The trial judge told him if he was not a pauper he could not appoint an attorney for him and gave him time to get an attorney. The defendant said he did not want an attorney and again the judge asked him if he had the money with which to hire an attorney if he desired one and his answer was "No, sir."

Again, the trial judge told him it was his duty to appoint an attorney if the defendant desired one and asked him again if he desired an attorney to confer with before he was arraigned and the defendant said "I believe so, sir." to which the court said "You what?" and the answer was "I, yes sir."

The court then asked him about the property he owned and the defendant finally determined he would go without an attorney being present in his behalf.

The court said "You understand that the court will give you time to get your own attorney if you want one?" to which the defendant answered "Well, right at this time, sir, I wouldn't have any way to get one." In answer to the next question by the court as to whether or not the defendant desired to go ahead with arraignment, the defendant said "Yes, sir."

Our Supreme Court said that:

"... the record showed that the appellant did not knowingly and voluntarily waive his right to counsel at the arraignment. On the contrary, he explicitly requested the trial court appoint him counsel. Appellant was clearly entitled to have counsel appointed for him by the court. If this appellant was not so entitled it would be difficult to imagine who would be. In the absence of a valid waiver of right to counsel, this guilty plea was invalid and should be vacated."

In the case of *Smith* v. *Lane* (7th Cir. 1970), 426 F. 2d 767, the court said:

"Defendant had a constitutional right to have the assistance of counsel in 1942. It cannot be deemed waived if the accused was not informed of his right to counsel even though he could not afford to pay.

"Merely asking a defendant if he 'wants' an attorney is not sufficient to inform him that he has a right to any attorney. "An indigent accused must know not only of his right to be represented by counsel, but must also know that if he could not procure one through his now resources the court would appoint a lawyer for him.

"The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver."

The court, speaking further, said that the court concluded that the District Court could not properly determine from the briefs, record entry quoted and petition that petitioner had intelligently waived counsel. The court further said that it became necessary for the court to order respondent to show cause why a writ should not be granted and to determine any material issues of fact after a hearing. "If petitioner did not intelligently waive counsel in the 1942 proceeding, the 1942 conviction is invalid, and the life sentence that rests upon it is also invalid."

Applying the standard to the facts laid down in the case of *Johnson* v. *Zerbst, supra,* to the case at bar it is clear that the defendant-appellant, Hall, could not waive his right to court appointed counsel without knowledge of that right. Therefore, Hall's waiver of his right to counsel at arraignment was invalid.

We are of the opinion that the State's contention that Hall was not a pauper at the time of his arraignment was not supported by the evidence. The only evidence as to his ability to pay was that he had three months in which to raise $100 to pay a retainer fee to an attorney and could not raise it and wanted another month or so in which to raise the money. The trial court failed to go into his worth or his income or to determine in any way any facts on which the trial court could adjudge whether or not Hall was a pauper and could not afford to pay the $100 retainer for counsel.

This knowledge gathered by the court in its interrogation of the defendant and its having continued the cause a number

of times because of lack of funds places the burden on the trial court to take extra measures to protect the defendant's right to counsel. Certainly, the trial court was obligated to determine Hall's financial condition and offer him court appointed counsel before he was arraigned, and to have such counsel present at the arraignment.

The trial court should have fully advised the defendant of his constitutional rights, including the right to counsel, before he was asked to plead "guilty" or "not guilty."

The court should have interrogated the defendant as to his worth to determine if he were a pauper. This interrogation as to the defendant's being or not being a pauper should, in our opinion, be conducted in open court and all the evidence reported and made a part of the record in the cause. Such a record would protect the rights of the defendant and also protect the court on its actions as against any charges he did not duly determine the financial status of the defendant charged with the crime and did not fully advise the defendant of all of the defendant's constitutional rights.

If there was a preponderance of the evidence that the defendant was a pauper, then the court should have appointed a competent and qualified attorney for him and continued the hearing until such time that the attorney could have completed his research and investigation of the crime charged and have had ample time to then confer with the defendant before arraignment.

Chief Justice Arterburn stated in the case of *Conley* v. *State* (1972), 259 Ind. 29, 284 N. E. 2d 803:

> "Further, our trial judges have an affirmative duty to advise unrepresented defendants of their constitutional rights and the consequences of a decision to plead guilty. [Citing cases.]
>
> * * *
>
> "It would be wise and prudent for a trial judge in Indiana to follow the federal rule by inquiring as to the understand-

ing and voluntariness of a guilty plea entered by a criminal defendant at the time the plea is tendered. We suggest also that even when represented by counsel, a cautious and discreet judge would make the same inquiry. We say this although the court does not have the burden of representing the defendant if he has counsel. The court is not the defendant's attorney, and we have held that every defendant is entitled to an attorney, *even at taxpayer's expense if a pauper*. The purpose of such an attorney is to advise the defendant. . . .

". . . It follows that in a criminal case, the defense attorney bears the affirmative obligation of informing the defendant of his constitutional rights, the existence of defenses, and the consequences of his plea. . . ."

This court appreciates the fact that the trial court desires to move its trials along and that each continuance of a jury trial will probably cause another case or two that might have been tried to be postponed indefinitely. However, the press of business in a trial court or this or the Supreme Court cannot be used as a reason for not giving a person charged with a crime a fair, honest and impartial trial.

This court is, therefore, of the opinion that defendant-appellant, Hall, was arraigned without counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution and also Article I, Section 13 of the Indiana Constitution.

Now that we have determined that the court committed reversible error, as set out in the specifications in defendant's motion for a new trial, as enumerated in this opinion, we shall not write on any further alleged errors, as the same is not necessary. *Selner* v. *Fromm, et al.* (1969), 145 Ind. App. 378, 251 N. E. 2d 127; *Bd. of Comm.* v. *Flowers* (1964), 136 Ind. App. 597, 201 N. E. 2d 571.

The court hereby reverses the judgment herein and orders the same remanded to the Lawrence Circuit Court for a new trial.

Robertson, P.J., and Lybrook, J., concur.

NOTE.—Reported in 288 N. E. 2d 787.