MITCHELL D. HOWARD, JR. *v.* STATE OF INDIANA.

[No. 3-873A105. Filed December 18, 1974. Rehearing denied January 21, 1975. Transfer denied June 2, 1975.]

R. D. Reading, Reading and Swartz, of Wabash, for appellant.

Theodore L. Sendak, Attorney General, David A. Miller, Deputy Attorney General, for appellee.

STATON, J.—Mitchell D. Howard, Jr., was charged with involuntary manslaughter in connection with the death of his two-year-old stepson. He was tried by jury and found guilty of cruelty and neglect of a child. On appeal, Howard raises sufficiency of the evidence to support his conviction.[1] We reverse.

Howard was charged with involuntary manslaughter by amended affidavit on November 10, 1972 as follows:

---

[1] Howard also alleges error in the admission of certain photographs of the deceased child. Since we are reversing the trial court's judgment for insufficient evidence, we need not discuss this contention of error. Hall v. State (1972), 153 Ind. App. 688, 288 N.E.2d 787. See, however, Warrenburg v. State (1973), 260 Ind. 572, 298 N.E.2d 434.

"Buddy Hettmansperger, being duly sworn upon oath, says that on or about the 14th day of December 1971, at and within the County of Wabash, and State of Indiana, one, Mitchell D. Howard, Jr., then and there being, did then and there unlawfully and feloniously kill a human being, to-wit: David A. Schell, aged two (2) years, without malice and involuntarily in the commission of an unlawful act, to-wit: that said Mitchell D. Howard, Jr., who then and there had the custody, care and control of a certain minor child, to-wit: one David A. Schell, aged two (2) years, did then and there cruelly and unlawfully ill treat and abuse, and inflict unnecessary and cruel punishment upon said minor child, so that said minor child was bruised and injured about the head and abdomen, and thereby inflicting mortal wounds upon the body of said minor child, David A. Schell, of which mortal wounds the said David A. Schell, then and there died, the same being contrary to the form of the Statute in such cases made and provided and against the peace and dignity of the State of Indiana."

To prove Howard's guilt of cruelty and neglect of a child under IC 1971, 35-14-1-2; Ind. Ann. Stat. § 10-813 (Burns 1956), the State had to prove that Howard bruised and injured David A. Schell about the head and abdomen ". . . (a) inflicting unnecessarily severe corporal punishment upon a child; [or] (b) inflicting upon a child unnecessary suffering or pain, . . ."

Considering the evidence most favorable to the State, the record discloses the following: David A. Schell, age two, resided in Wabash, Indiana, with his mother Anita Howard, his stepfather, Mitchell Howard, and his two brothers, ages five and one. On December 11, 1971, David and his older brother went to their maternal grandparents to spend the weekend. David's mother testified that at the time David went to visit his grandparents:

"He had two bruises on his forehead, and then his cheek was bruised. He had a small cut or burn on one foot, and then he had just other bruises on him."

On Sunday evening, December 12th, David was returned to his home and spent the evening with his mother, stepfather

and his two brothers. On Monday, December 13th, Mitchell Howard's parents came to the house. Mitchell Howard's mother, Anita and Mitchell went Christmas shopping leaving the boys in the care of Mitchell Howard's father. That evening, Anita, Mitchell and the three boys had supper together. Later in the evening Anita took the youngest boy to a baby-sitter's before reporting to work at midnight. She left the house at about 11:20 o'clock P.M. leaving David alone in the house with his stepfather and his older brother. At approximately 3:00 o'clock A.M. on December 14, 1971, Howard and a neighbor brought David to the emergency room of the Wabash County Hospital. David was examined by Dr. Philip C. Ferguson who described his condition as follows:

> "Q. And, Doctor, I would like for you to describe generally the examination or your findings from this examination.
>
> "A. Well, the patient was approximately a two-year-old, white male who was lying unconscious on the examining table. And just generally looking at his body, he had multiple bruises covering his entire face, his upper arms, his lower arms, his anterior chest, his back, his hips, and his legs, and his lower legs, even including the tops of his feet. He was completely non-responsive. His pupils were fixed and dilated which is an indication that the child had had a severe head injury and probably injuries that were permanent. The child's extremities were stiff, which also goes along with severe head injuries. His heart rate was quite irregular and at times very faint. His blood pressure was unstable. His respirations were unstable, and the child was in a very critical state at that time."

X-rays were taken revealing a basal skull fracture. In the afternoon of December 14, David was taken by ambulance to Methodist Hospital in Indianapolis, Indiana, where he died on December 17, 1971. An autopsy was performed by Dr. Higinio Esparza who determined the cause of death to be either the skull fracture or abdominal hemorrhage.

Neither Dr. Esparza nor Dr. Ferguson could pinpoint the time the injuries causing death were inflicted. Dr. Ferguson testified:

"Q. Were there any injuries present which in your opinion had been sustained as recently as three hours?

"A. I don't think I could put a time limit on any of them. As far as that short of a duration. I think probably the injuries had been there longer than that. Maybe up to twenty-four hours.

\* \* \*

"Q. . . . Doctor, you have indicated the X-ray showed a basal skull fracture. From reading the X-ray, were you able to determine how old that fracture was?

"A. No."

Dr. Esparza testified:

"Q. Doctor, can you tell us how old these injuries were approximately?

"A. Because the artificial life in which the baby was sustained during the last lapse of time, it's rather difficult for me to say how old these lesions are.

"Q. In other words, you couldn't pinpoint them to say any given twelve-hour period, could you?

"A. Not twelve—not by hours, but if I be obliged to say, I would say by days. Days, it will be a little less compromising, let's say.

"Q. In other words, could you say with any degree of medical certainty they were four as opposed to five or three days old?

"A. No, sir."

Dr. Esparza related several ways the injuries to David's head and abdomen could have been inflicted. He stated specifically that the skull fracture could not have been caused by a fall down a stairs and also stated:

"Q. Doctor, based upon a reasonable degree of medical certainty, do you have an opinion as to what type of injuries—what types of force caused these injuries which resulted in death?

"A: It is a force applied with a blunt object, in such a way that the force was intense enough to produce the lesions but not sharp enough to produce cuts over the overlying skin."

Mitchell Howard explained David's injuries as follows: He testified that David had vomited and that he had taken David upstairs to bathe him. He had placed David in the bath tub in about two inches of water when David's brother started to cry downstairs. Howard ran downstairs to check on the other boy and when he returned, he found David unconscious in the bath tub, lying on his back. Dr. Ferguson testified that Howard gave him conflicting accounts of how David sustained his injuries. First, Howard told him that upon returning upstairs after checking the other child, he had found David unconscious in the bath tub with water in his mouth. Howard also explained David's bruises as the result of a fall down a stairway several days earlier. Dr. Ferguson testified that there was no evidence of water in David's lungs or of wet hair. At a later time, Howard told Dr. Ferguson that after going downstairs, he found David on the bathroom floor with water in his mouth.

However, the unexplained severe condition of David Schell at 3:00 o'clock A.M. on December 14, 1971 at the Wabash County Hospital and Mitchell Howard's conflicting explanations of David's injuries is not sufficient circumstantial evidence to support the jury's verdict. The evidence most favorable to the State merely discloses that the injuries to David Schell's head and abdomen occurred between 12 and 24 hours prior to his hospitalization. During that period, David was under the control of several persons other than Mitchell Howard. There was no testimony that Mitchell Howard ever struck David Schell. At most, the evidence shows that Mitchell Howard, among others had an opportunity to inflict the injuries to David's head and abdomen. This evidence merely raises a suspicion of guilt and it is not sufficient to support a conviction of cruelty and

neglect of a child as charged in the affidavit. *Phillips* v. *State* (1973), 260 Ind. 321, 295 N.E.2d 592; *Pierce* v. *State* (1974), 161 Ind. App. 217, 315 N.E.2d 376.

We reverse.

Hoffman, C.J., and Garrard, J., concur.

NOTE.—Reported at 319 N.E.2d 849.