**William C. MITCHELL,
Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

**No. 1–1080A270.**

Court of Appeals of Indiana,
First District.

March 10, 1981.

366

David M. Shaw, Evansville, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

NEAL, Presiding Judge.

Defendant-appellant William C. Mitchell (Mitchell) was convicted of burglary, a Class C felony, in a trial before a jury in the Warrick Superior Court. He appeals.

We reverse.

## ISSUE

Five issues are presented for review. We will determine this case only on Issue No. II. Inasmuch as the other errors are such that they are not likely to be repeated on retrial, we decline to address them. Issue No. II involves the right under the Sixth Amendment of the United States Constitution to the assistance of counsel in a criminal trial. Mitchell proceeded in his defense *pro se.* He now raises for review the correctness of the court's actions in (1) not advising him of the dangers and disadvantages of self representation, and (2) not conducting a hearing and exploring in depth the availability of resources in the possession of Mitchell to employ an attorney.

## STATEMENT OF THE FACTS

The record discloses that Mitchell was charged with burglary on July 27, 1979, and secured counsel on July 30. A trial date was fixed for February 26, 1980. On January 4, 1980, his counsel filed a motion to withdraw for the reason that Mitchell had not paid their fees or otherwise cooperated. The withdrawal was ultimately permitted by the court on February 26. Mitchell then secured new counsel on March 9, and the trial was reset for April 14. On April 1, the new attorney filed his motion to withdraw for failure to pay fees. At the hearing on the motion on April 2, the court told Mitchell he intended to try the case on April 14. Mitchell responded that he did not have an attorney but intended to get one, but if he could not get one he would be there alone. The court told Mitchell that the charge of burglary was serious and the penalty was five years plus or minus three years. The court reminded Mitchell that he had already had two sets of attorneys and one continuance. The court further reminded Mitchell that his latest attorney was still ready and willing to try the case if he could make suitable financial arrangements. There then occurred the following exchange between Mitchell and the court:

"MR. WILLIAM C. MITCHELL:
Yes, sir, that, that is something that, that we've talked about. I've talked with the lawyers about it. I've told

them that I—that there is no way that I could possibly give them that lump sum of money, and none of them would take partial payments or anything of that nature, so I–if I keep running into these problems, I'm going to have to come in alone that date, April the 14th.

COURT:

Well, there has been no request for the Court for appointment of indigent counsel, and having some familiarity from your discussions with me of your background and your present employment status, I doubt that you would fit that category.

MR. WILLIAM C. MITCHELL:

Right.

COURT:

But, you are not now asking for the appointment of counsel as an indigent then, is that correct?

MR. WILLIAM C. MITCHELL:

Sir, what does that consist of?

COURT:

That means that there is no possible way that you can obtain counsel to represent you. That means that you have no property that you can sell or mortgage, that you're not employed, that there is no way that you can raise enough money to provide counsel to represent you in this cause.

MR. WILLIAM C. MITCHELL:

Well, that's not altogether true.

COURT:

I understand that from your discussions with me.

MR. WILLIAM C. MITCHELL:

Right.

COURT:

That's why I want to make sure for the record, if you wish to ask for appointed counsel, then I will have to place you under oath and question you as to your employment, any property that you have, that sort of thing. If I find that you are indigent, then counsel will be appointed to represent you. On the facts you've related to me, I don't think that's the case, but I want the record to show that that has been considered here, and I want to determine at this time whether or not you wish to ask for indigent counsel.

MR. WILLIAM C. MITCHELL:

At this time?

COURT:

Yes.

MR. WILLIAM C. MITCHELL:

No, sir, I do not.

COURT:

Alright. You understand that you have counsel to represent you, but that's going to be your financial obligation to provide for yourself.

MR. WILLIAM C. MITCHELL:

Yes, sir.

COURT:

You also understand that this cause is assigned for trial by jury to commence at 9:00 a. m. on April 14, 1980?

MR. WILLIAM C. MITCHELL:

Yes, sir, I do understand that."

The record does not reflect any further request for pauper counsel. Mitchell appeared at trial *pro se*, and our examination of the transcript of the evidence reveals that his efforts in his own defense were nil.

### DISCUSSION AND DECISION

Two related problems are presented. One involves the duty of the court to examine a criminal defendant's resources and make a determination of whether he qualifies as an indigent. The other is the sufficiency of advice by the court to a defendant who elects to proceed *pro se* of the hazards and consequences of doing so. Both questions are essentially one, that is, securing a defendant's right to counsel in compliance with Article 1, Section 13, to the Indiana Constitution, and the Sixth and Fourteenth Amendments to the Constitution of the United States.

■ *Moore v. State*, (1980) Ind., 401 N.E.2d 676, is dispositive of the first problem. There the court stated at pp. 678–79:

"Defendant contends that the failure of the trial court to appoint him legal

counsel has denied him his constitutional right to the assistance of counsel and has resulted in a denial of his right to a fair trial. There is no doubt that we are dealing here with one of the most fundamental of our constitutional guarantees. A defendant charged with a crime is guaranteed the right to be represented by counsel by Article 1, Section 13 of the Indiana Constitution and the Sixth and Fourteenth Amendments to the Constitution of the United States. *State v. Minton*, (1955) 234 Ind. 578, 130 N.E.2d 226; *Wilson v. State*, (1943) 222 Ind. 63, 51 N.E.2d 848. A failure to permit a defendant to have counsel amounts to a denial of due process, and there can be no valid criminal trial unless a defendant is represented by counsel if he desires counsel. *Fitzgerald v. State*, (1970) 254 Ind. 39, 257 N.E.2d 305; *State v. Minton, supra; DeFrisco v. State*, (1972) 153 Ind. App. 609, 288 N.E.2d 576.

The guarantee of the right to be represented by counsel includes the right for an indigent defendant in a criminal prosecution to have counsel provided for him at state expense. *Pallett v. State*, (1978) Ind., 381 N.E.2d 452; *Swinehart v. State*, (1978) 268 Ind. 460, 376 N.E.2d 486. It is a judicial function to determine whether counsel shall be appointed at public expense, *Fulks v. State*, (1970) 255 Ind. 81, 262 N.E.2d 651, and this determination is within the sound discretion of the trial judge. *Hendryx v. State*, (1892) 130 Ind. 265, 29 N.E. 1131. While it is not possible to set specific monetary guidelines which would determine a defendant's indigency, there are several factors which must be considered. Since we are dealing with such a fundamental constitutional right, the record in each case must show that careful consideration commensurate with the right at stake has been given to the defendant. Although we find no Indiana cases which discuss what specific factors must be considered, these factors have been discussed by courts in other jurisdictions. *See, Annot.*, 51 A.L.R.3d 1108 (1973).

First, it appears clear that the defendant does not have to be totally without means to be entitled to counsel. If he legitimately lacks the financial resources to employ an attorney, without imposing substantial hardship on himself or his family, the court must appoint counsel to defend him. *Anaya v. Baker*, (10th Cir. 1970) 427 F.2d 73; *United States v. Cohen*, (8th Cir. 1969) 419 F.2d 1124; *State ex rel. Partain v. Oakley*, (1976) W.Va., 227 S.E.2d 314; *In re Smiley*, (1967) 66 Cal.2d 606, 58 Cal.Rptr. 579, 427 P.2d 179. *See also, Hardy v. United States*, (1964) 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331; American Bar Association Project on Minimum Standards for Criminal Justice, Approved Draft (1968), *Standards Relating to Providing Defense Services* § 6.1.

The determination as to the defendant's indigency is not to be made on a superficial examination of income and ownership of property but must be based on as thorough an examination of the defendant's total financial picture as is practical. The record must show that the determination of ability to pay includes a balancing of assets against liabilities and a consideration of the amount of the defendant's disposable income or other resources reasonably available to him after the payment of his fixed or certain obligations. *People v. Castile*, (1979) 71 Ill. App.3d 728, 28 Ill.Dec. 259, 390 N.E.2d 426; *Minniefield v. State*, (1972) 47 Ala. App. 699, 260 So.2d 607; *Morgan v. Rhay*, (1970) 78 Wash.2d 116, 470 P.2d 180. The fact that the defendant was able to post a bond is not determinative of his nonindigency but is only a factor to be considered. *People v. Castile, supra; Perryman v. State*, (Tex.Crim.App.1975) 519 S.W.2d 438. The court's duty to appoint competent counsel arises at any stage of the proceedings when the defendant's indigency causes him to be without the assistance of counsel. *State ex rel. Grecco v. Allen Circuit Court*, (1958) 238 Ind. 571, 153 N.E.2d 914; *State ex rel. Shorter v. Allen Superior Court*, (1973) 155 Ind. App. 269, 292 N.E.2d 286."

The second aspect of the problem is presented when a criminal defendant elects to waive his right to counsel and represent himself in the proceedings. When he so chooses, the waiver of the right to the assistance of counsel must be shown to have been voluntarily made. *Johnson v. Zerbst,* (1938) 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461. It is the duty of the trial court to establish a record which shows that an accused who has elected to waive counsel and proceed *pro se* has done so voluntarily, knowingly, and intelligently. *Shelton v. State,* (1979) Ind.App., 390 N.E.2d 1048; *Faretta v. California,* (1975) 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. A serious and weighty responsibility is imposed upon the trial judge to determine whether there was an intelligent and competent waiver. The constitutional right of an accused to be represented by counsel invokes of itself the protection of the trial court. *Grubbs v. State,* (1970) 255 Ind. 411, 265 N.E.2d 40. To discharge the duty imposed, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. *Von Moltke v. Gillies,* (1948) 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309. A defendant must be made aware of the consequences of the choice he is making so that he makes his choice with his eyes wide open. Merely making the defendant aware of his constitutional right to counsel is insufficient. *Wallace v. State,* (1977) Ind.App., 361 N.E.2d 159. A strong presumption exists against waiver of the constitutional rights to counsel. *Von Moltke, supra.*

It is clear from the quoted portions of the record that Mitchell desired counsel. No waiver of his Sixth Amendment right can be inferred from the record which would satisfactorily meet the requirements of *Faretta, Shelton, Wallace,* and other cases decided under *Faretta.* The colloquy between the court and the defendant established that Mitchell wanted counsel, but the ones he had contacted or retained wanted their fees in advance, and he did not immediately have the money to so pay all of the fees in advance. He told the court that if he could not work it out he would be at the trial alone. It is our opinion that the holdings of the above-cited authorities required the trial court at this juncture to conduct, on its own initiative, a thorough examination into the question of legal representation of Mitchell. This would include, first, an inquiry *of record,* as required under *Moore, supra,* into Mitchell's resources, and a determination made as to whether Mitchell had sufficient resources and ability to pay his counsel, himself. If the court, after such inquiry, were to determine that Mitchell had insufficient resources and ability to pay counsel, it would have then had the further duty to appoint counsel. If the court determined that Mitchell could pay his retained counsel, but would not, then the court had the duty of advising Mitchell of the dangers and disadvantages of self representation as required by *Faretta, supra,* and *Wallace, supra.*

It is apparent that the court at some time had a conversation off the record with Mitchell relative to the appointment of a pauper attorney. However, we have no way to review such private conversation not of record. The record must affirmatively show that the constitutional mandates were complied with, and in this instance it does not, either in the court's exploring Mitchell's financial resources, or in advising him of the hazards and consequences of *pro se* representation. We are aware that Mitchell did not directly request the appointment of a pauper attorney, and that the court did offer a hearing to determine indigency. However, this was accompanied by a statement that the court did not think Mitchell qualified for pauper counsel based on information not of record. The record discloses that Mitchell was floundering in a problem which culminated in his proceeding to trial without counsel. A lay criminal defendant cannot be expected to know what to do, or what to request of the court, and his failure to directly request pauper counsel is not controlling. In our opinion the court erred in failing to settle, *of record,* the question of Mitchell's legal representation and in permitting him to go to trial without counsel.

For the above reasons this cause is reversed, and the trial court is ordered to grant a new trial.

Reversed.

ROBERTSON and RATLIFF, JJ., concur.