436 F.2d 764
 Ralph E. FREDERICKSON and James Brand, individually, on their own behalf and on behalf of all others similarly situated, Los Angeles Local Federation No. 2 affiliated with System Federation No. 114 of the Railway Employees' Department, AFL-CIO, Appellants,
v.
SYSTEM FEDERATION NO. 114 OF RAILWAY EMPLOYEES' DEPARTMENT, AFL-CIO, Los Angeles Local Federation No. 8, affiliated with System Federation No. 114 of the Railway Employees' Department, AFL-CIO, Appellees.
 No. 24197.
 United States Court of Appeals, Ninth Circuit.
 December 23, 1970.
 
 Corinblit & Shapiro (argued), Jack Corinblit, Los Angeles, Cal., for appellants.
 George E. Bodle, Los Angeles, Cal. (argued), Mulholland, Hickey & Lyman, Toledo, Ohio, Bodle, Fogel, Julber & Reinhardt, Los Angeles, Cal., for appellees.
 Before BARNES, HAMLEY and KILKENNY, Circuit Judges.
 BARNES, Circuit Judge.
 
 
 1
 Appellants, members of craft unions belonging to System Federation No. 114 of the Railway Employees' Department of the AFL-CIO appeal a judgment entered by the District Court which dismissed their action filed under the Railway Labor Act (45 U.S.C. §§ 151-163, 181-188). Our jurisdiction on review rests upon 28 U.S.C. § 1291.
 
 
 2
 Frederickson (a member of the International Brotherhood of Electrical Workers), Brand (a member of the Sheet Metal Workers Union), both individually and on behalf of co-workers similarly situated, and Local Federation No. 2, seek declaratory relief and damages against System Federation No. 114 and its affiliate, Local Federation No. 8, in a dispute concerning seniority rights at the Los Angeles Division Shops of the Southern Pacific Railway. The controversy began when the Southern Pacific announced in 1960 that it intended to close down its General Shops in Los Angeles. The Division Shops maintained by the line were located a few miles from the General Shops. After the announcement by the Southern Pacific, the line and System Federation No. 114 began negotiation to amend the collective bargaining agreement to make adjustments in seniority in light of this development. Although there was dispute among the parties, the trial court, after extensive hearings on these issues, found that there subsequently was a combination and coordination of the work and facilities of the General Shops with that of the Division Shops, that work was transferred from the General Shops to the Division Shops and that the General Shops employees followed their work to the Division Shops.
 
 
 3
 At this point, some background as to the collective bargaining structure and seniority system in the railway industry is needed. The Railroad Employees' Department (herein R.E.D.) is a voluntary organization composed of six railway shopcraft unions and acts as collective bargaining representative for these unions under the Railway Labor Act (45 U.S.C. § 151 et seq.) in negotiations with the various employer lines. The System Federations are subordinate components chartered by the R.E.D. to represent it on one or more railroad systems. The governing body of each System Federation is its Executive Board which is composed of the General Chairman of each of the affiliated shopcraft unions. Local Federations No. 2 and No. 8, both affiliated with System Federation No. 114, represent respectively the workmen at the General Shops and Division Shops in Los Angeles.[1]
 
 
 4
 On the Southern Pacific system, because of the sprawling nature of its operations, the "point seniority rule" has been employed. Provision for this system was made in the 1942 collective bargaining agreement (hereafter 1942 agreement) in effect between the Southern Pacific and System Federation No. 114. Under Rule 32 of the 1942 agreement, the seniority date which each employee acquired was the date of first employment at a place of employment called a point, and the employee had seniority at no other place along the line. The Division Shops and the General Shops were both considered separate points of employment despite their proximity.
 
 
 5
 Thus, under the prevailing system, the General Shops employees who moved to the Division Shops would carry no seniority with them. The railroad and System Federation agreed on December 8, 1960, however, that as of that date, the seniority roster of the General Shops employees be placed on the bottom of Division Shops seniority roster. In effect, all General Shops employees who moved to the Division Shops were to have a December 8, 1960 seniority date, despite their date of first employment on the line or the date upon which they transferred to the Division Shops. According to the appellees, of the approximately 1,000 General Shop employees in December, 1960, 560 moved to the Division Shops between that date and May, 1964. After May, 1964, they claim that about 220 switched to the Division Shops.
 
 
 6
 In December of 1960, the R.E.D. had in effect a policy statement issued as Circular 2395 which reads:
 
 
 7
 "It is also the policy of the Executive Council of the R.E.D. that if work is transferred from one seniority point to another seniority point or points on some railroad, and such transfer of work results in an increase in the then active force at the point or points to which such work is transferred, the employees thus adversely affected should be entitled to follow their work and necessary agreement shall be negotiated to have seniority adjusted to accomplish this purpose."
 
 
 8
 On April 22, 1964, the R.E.D. convention passed an amendment to its Constitution and By-laws which took effect on May 1 of that year and provides in part:
 
 
 9
 "Section 1. In the event of a combination or coordination of the operation of facilities by a carrier or carriers, the rights of all employees in each craft or class affected by such transaction, whether rights of seniority or otherwise, shall be so modified and adjusted, and the total number of jobs available after such combination or coordination shall be so apportioned among such employees, as to result in the least possible detriment to all of the employees affected. Seniority rights of affected employees shall be dovetailed in a manner which will permit affected employees to follow their work on an equitable basis.
 
 
 10
 * * * * * *
 
 
 11
 "Section 4. In the event that any carrier or carriers shall announce a proposed coordination or combination of operations or facilities, it shall be the duty of the duly designated officials of the System Federation or Federations representing the employees affected, to confer as soon as possible and reach a decision relative to the modification or adjustment of the rights of the employees whom they represent, and as to the apportionment of work among them and their seniority rights after the coordination or combination has been completed. Such decision shall conform to the provisions of Section 1 hereof, and, in the event the said Job Protection Agreement is applicable, to the terms of said Agreement, and all changes, modifications, substitutions and additions thereto which shall then be effective. When the decision of the designated officials of the System Federation or Federations has been accepted by the carrier or carriers involved, the same shall constitute a modification of all collective contracts and employment contracts of the employees affected, who are represented by said System Federation or Federations, and a modification of all rights thereunder, and shall be binding upon all of such employees."
 
 
 12
 On August 14, 1964, Appellants Brand and Frederickson filed this action for damages and declaratory relief on behalf of themselves and those similarly situated co-workers whom they purport to represent. Appellants' first cause of action alleges that System Federation 114 engaged in hostile discrimination against them in violation of its duty of fair representation under the Railway Labor Act, 45 U.S.C. § 151 et seq. by entering into the December 8, 1960, agreement, placing all Division Shop employees at one same low position in seniority. In support of this allegation, they contend that the seniority rosters should have been "dovetailed" according to R.E.D. Circular 2395 but that the System Federation failed in its duty because of political motives, i. e., that the Division Shop employees were more numerous and therefore more politically powerful than those at the General Shops.
 
 
 13
 In the second cause of action, appellants allege that the amendment to the R.E.D. Constitution and By-laws was binding upon the System Federation, and that this amendment created a duty to negotiate an agreement "dovetailing" those workers transferring from the General Shops to the Division Shops after it became effective (i. e., May 1, 1964), in an equitable manner.
 
 
 14
 The third cause of action realleges the first cause of action but names Local Federation 2, the local unit affiliated with System Federation 114 which represents the General Shops workers, as party plaintiff.
 
 
 15
 After protracted delays in the litigation, appellants filed a motion for partial summary judgment based on the second cause of action. The Court denied this motion without prejudice and ordered a hearing on limited factual issues relating to the R.E.D. amendment. (See infra.) After finding in favor of appellants as to all matters relating to the movement of work and facilities between the shops, the Court dismissed the action and gave judgment for appellees on three grounds. First, it found that although the System Federation had no provision in its By-laws which required exhaustion of internal remedies prior to suit, Frederickson, Brand and the class they represented were members of individual craft unions which comprised the System Federation and which did require exhaustion of remedies. Because of their failure to exhaust these intra-union remedies, the Court held that it lacked jurisdiction and that it had to dismiss the action. Secondly, the Court held that:
 
 
 16
 "The 1964 amendment to the Constitution and By-laws of System Federation No. 114, upon which plaintiffs rely, was never incorporated within the contract existing between Southern Pacific and System Federation. Inasmuch as the 1964 amendment upon which plaintiffs rely was not at any time incorporated into or made a part of the 1942 contract herein described, as amended December 8, 1960, System Federation No. 114 was justified in disregarding the amendment providing for dovetailing and was justified in its reliance upon the provisions of the memorandum of agreement dated December 8, 1960." (R.T. 612-613).
 
 
 17
 Thirdly, and finally, the Court found that appellants were not authorized by Local Federation No. 2 to bring this suit on its behalf and that no evidence had been introduced concerning it. For these reasons Local Federation No. 2 was dismissed as a party plaintiff.
 
 
 18
 We hold that the District Court was in error in the first two grounds upon which it relied, and we therefore reverse and remand for further proceedings.
 
 
 19
 Generally, the courts require that a member who is aggrieved by an act of his union must exhaust his intra-union remedies in the absence of a showing that it would be futile or that the remedies are inadequate. Foy v. Norfolk and Western Railway Co., 377 F.2d 243, 246 (4th Cir. 1967).
 
 
 20
 Although the Trial Court based its first ruling in favor of System Federation No. 114 upon the appellants' failure to exhaust an adequate intra-union remedy, we find no evidence on the record relating to this issue. In its order, dated January 19, 1968 (R. 467), the District Court set a hearing on the limited issue of whether there was a combination or coordination of the operation, or facilities, of the General Shops and Division Shops after the By-law went into effect. It appears from the record (p. 520) that this hearing was subsequently broadened to include the questions whether, if there was such a coordination or combination, (1) men moving from the General to the Division Shops had followed their work, and (2) whether the seniority of affected employees had been adjusted "on an equitable basis."
 
 
 21
 On August 8, 1968, after the factual hearing on the issues outlined above, the trial judge asked for briefs on the question of exhaustion of remedies by appellants. There is no suggestion in the record of any factual hearing upon this issue ever being held. Appellees did file and argue a motion for summary judgment (in which exhaustion was a ground) on which they sought to prevail. They also submitted affidavits by officials of the constituent shopcraft unions with the motion and appended the grievance procedures of these unions as exhibits attached to the affidavits. Neither the affidavits nor the exhibits attached to them, nor information on the question elicited from other sources (such as interrogatories) were ever introduced into evidence.
 
 
 22
 Furthermore, the Trial Court denied appellee's motion for summary judgment and specifically decided the issues presented upon the merits. (R. 603) We are therefore faced with a decision on an issue for which there was no factual hearing and no evidence in the record for us to consider. There are therefore no facts in the record upon which the Court could properly decide whether an adequate remedy was available to appellants, but not exhausted by them. The dispositive legal issue is whether appellant had a reasonable and substantial likelihood of obtaining redress of their grievances (if their claims were meritorious) by pursuing the internal remedies of their individual craft unions. If it is clear they could, the District Court is justified in dismissing their complaint for failure to do so. The appellants should not be denied a hearing on the merits of their claim, however, unless there was a genuine possibility that they could have obtained an adequate intraunion remedy. Because we can find no evidence on the record to sustain either conclusion, we hold that the District Court must have a factual hearing on this question.
 
 
 23
 We also find that the District Court misconceived the issue when it dismissed on the second ground. A union's duty to its members is not measured solely by the collective bargaining agreement then in force. The union's Constitution acts as a contract between the union and its members. Appellants do not claim that the appellees must or should or could have unilaterally changed the 1960 agreement. Instead, they seek a declaration that the System Federation was under a duty to negotiate to that end. While the existence of the 1960 agreement has a bearing on whether the Federation as collective bargaining representative acting under the R.E.D. Constitution was under such a duty, it does not foreclose the question. We express no viewpoint as to the merits of that question.
 
 
 24
 The acts required by the 1964 Amendment (if any) and its proper interpretation are not clear upon its face. Several questions as to the intentions of the R. E.D. convention and the manner in which the Amendment has been interpreted in practice remain open. It is only in the light of these inquiries that the extent of the System Federation's duty (if any) under the provision that "seniority rights * * * shall be dovetailed in a manner which will permit affected employees to follow their work on an equitable basis * * *" can be established. The treatment of those workers who transferred after May 1, 1964, in a manner different than those who transferred earlier as to seniority also presents a difficult problem with respect to the proper use of the Federation's representative capacity. Additionally, the issue of the retroactive application of the April 22, 1964 Amendment (with its reference in Section 4 to any "proposed coordination") presents a matter which was not the subject of any proposed issues specified by the court as one upon which there was to be a factual hearing. It was also not the subject of any finding in the Memorandum Decisions of October 14, 1968 (R. 602, et seq.) and not specifically referred to in the Findings of Fact of December 9, 1968 (R. 631, et seq.), except perhaps as inferentially passed upon in Conclusion of Law 5, (R. 638).
 
 
 25
 Appellees make several contentions that the judgment should be sustained on grounds not relied upon by the trial court. We can dismiss the majority of these by noting again that several factual determinations must be made by the District Court before the Amendment can be authoritatively interpreted. Until such determinations are made, we have no basis for deciding whether the 1960 agreements satisfied the System Federation's duties under the R.E.D. Constitution.
 
 
 26
 We also reject the appellees' contentions that the first cause of action does not state a claim for relief. The Second Circuit in Ferro v. Railway Express Agency, Inc., 296 F.2d 847, 851 (1961) has held that an allegation that a bargaining agent drew distinctions among members based on political power within the union states a good cause of action. The complaint contains sufficient allegations to entitle appellants to a trial on the merits. See Ferro, supra, at 851, and Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). We also hold that the Southern Pacific and Local Federation No. 8 are not indispensible parties to this action. Conley, supra, at 45, 78 S.Ct. 99, 2 L.Ed. 2d 80.
 
 
 27
 The judgment is reversed and remanded for further proceedings not inconsistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 For a detailed discussion of the collective bargaining system in the railroad industry, see Akron, Canton and Youngstown Railroad Co. v. International Brotherhood of Electrical Workers, 237 F.Supp. 343 (N.D.Ill.1964)