Earl NATION, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee, (Plaintiff Below).

No. 2–281A36.

Court of Appeals of Indiana, Second District.

Oct. 1, 1981.

Robert W. Hammerle, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Aimee L. Kolze, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Judge.

Defendant-appellant Earl Nation (Nation) appeals from a conviction by the court of two counts of promoting prostitution, arguing he did not voluntarily, knowingly, and intelligently waive the right to counsel.[1]

We reverse.

■ A defendant charged with a crime is guaranteed the right to be represented by counsel by Article I, Section 13 of the Indiana Constitution and the Sixth and Fourteenth Amendments of the United States Constitution. *Moore v. State,* (1980) Ind., 401 N.E.2d 676. He also has the constitutional right to waive the assistance of counsel and represent himself if he so chooses.[2] *Faretta v. California,* (1975) 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 462; *Russell v. State,* (1978) Ind., 383 N.E.2d 309. Although the right to counsel and the right of self-representation are both constitutional rights, the standards for establishing the relinquishment of these rights differ greatly due to the nature of the rights and the interest to be protected. *Russell.* As was stated in *Russell*:

"The right to counsel ensures that all defendants have access to the professional skill and knowledge needed to make the necessary procedural and substantive decisions in their trials; this right is also important to the implementation of the other constitutional rights of the accused, and helps ensure the accuracy of trial outcome in our adversary system. *Gideon v. Wainwright, supra,* at 372 U.S. [335] 342–45, 83 S.Ct. [792] 795–97, 9 L.Ed.2d [799] 804–6. The right of self-representation, on the other hand, is not recognized because it furthers these types of fair trial interests; it may actually hinder such interests. The sole value furthered

by the right of self-representation is that of personal autonomy. *See Faretta, supra,* at 422 U.S. 815–17, 95 S.Ct. 2531–32, 45 L.Ed.2d 570–71." 383 N.E.2d 313.

■ Because the sole value furthered by the right of self-representation is that of personal autonomy, a defendant need not be advised of his right of self-representation and will be deemed to have voluntarily waived this right by the mere failure to timely and unequivocally assert it. A knowing and voluntary waiver of the right of self-representation is not constitutionally mandated. *Russell.*

■ On the other hand, the waiver of the right to the assistance of counsel must be shown to have been voluntarily, knowingly, and intelligently made. *Johnson v. Zerbst,* (1938) 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461. It is the duty of the trial court to establish a record which shows that an accused who has elected to waive counsel and proceed *pro se* has done so voluntarily, knowingly, and intelligently. This court cannot infer a voluntary and intelligent waiver of this fundamental constitutional right from a silent record. *Johnson v. Zerbst; Faretta, Grubbs v. State,* (1970) 255 Ind. 411, 265 N.E.2d 40; *Wallace v. State,* (1977) 172 Ind.App. 535, 361 N.E.2d 159.

■ The record must affirmatively show the defendant was expressly advised of both his right to the assistance of counsel and the disadvantages of self-representation in clear and unambiguous language. *Mitchell v. State,* (1981) Ind.App., 417 N.E.2d 364; *McDandal v. State,* (1979) Ind. App., 390 N.E.2d 216; *Wallace v. State.*

■ The record in this case is deficient under this standard. It fails to show the trial court informed Nation of his right to the assistance of counsel. A record which

1. Nation raises other issues on appeal but because we reverse on this issue we do not discuss the other issues which are not likely to recur upon retrial.

2. A request to proceed *pro se* must be clear and unequivocal. Thus, half-hearted expressions of dissatisfaction with counsel and general references to self-representation do not constitute

an adequate assertion of the right. *Russell.* In the case at hand it is questionable whether Nation's request to allow counsel to withdraw satisfied the requirement of an unequivocal assertion of his right to proceed *pro se.* However, since we find the record does not show a knowing, voluntary, and intelligent waiver of the right to counsel, we do not reach this issue.

does not show a defendant was advised of his right to counsel does not show a knowing and intelligent waiver. A defendant cannot be deemed to have knowingly and intelligently waived a right of which he was not informed. *Smith v. Lane*, (1970 7th Cir.) 426 F.2d 767.

Given the presumption which exists against the waiver of the constitutional right to counsel, *Mitchell*, we find the record insufficient to support a conclusion that Nation voluntarily, knowingly, and intelligently waived his right to counsel.

Reversed and remanded with instructions to grant a new trial.

SULLIVAN, J., concurs.

BUCHANAN, C. J., dissents, with opinion.

BUCHANAN, Chief Justice, dissenting.

Unlike the majority, I believe the record does demonstrate that Nation, knowing of his right to be represented by counsel, voluntarily and intelligently relinquished that right. Nation has raised three additional issues, none of which presents reversible error. Because I would affirm the judgment of conviction, I discuss all of the issues in logical sequence; the majority reverses on the basis of Issue II.

### FACTS

The facts most favorable to the State disclose that on July 20, 1979, Thomas King (King) introduced seventeen-year-old Janice Marie Longworth (Longworth) to Nation. Longworth testified as to the purpose of the introduction: "He [King] was going to take me to meet Earl Nation because he told me that Earl Nation wanted me to work as a prostitute for him." *Record* at 84.

On July 23, Nation, after giving Longworth a choice of three locations at which she could work as a prostitute, took her to a house in Marion County owned by Margaret Burns. There, for approximately ten days, Longworth performed sexual acts for money, relinquishing her earnings to Nation at the end of each day.

On October 2, 1979 Nation was charged by information with four offenses. Count I charged him with promoting prostitution by "knowingly or intentionally entic[ing] or compel[ling] another person to become a prostitute[.]" *Ind.Code* § 35–45–4–4(1). Count II charged him with promoting prostitution by "receiv[ing] money or other property from a prostitute, without lawful consideration, knowing it was earned in whole or in part from prostitution[.]" *Id.* § 35–45–4–4(4). Nation was charged with contributing to the delinquency of a minor under count III and with intimidation under count IV.

Nation retained attorney Timothy O'Connor (O'Connor) for his defense. O'Connor represented Nation during the preliminary hearing, at which Nation waived arraignment and plead not guilty. O'Connor represented Nation at a pre-trial hearing at which Nation waived trial by jury and also filed several motions for continuance on his behalf. After O'Connor withdrew from the case at Nation's request, Nation hired attorney James A. Connor (Connor).

Nation's trial commenced with the following discussion between Nation, the court, and Connor:

> THE COURT: This is CR79–740B, State of Indiana versus Earl Nation. You are Earl Nation?
>
> DEFENDANT: Yes.
>
> THE COURT: Let the record show, Comes now the Defendant, in person and by counsel Mr. James Connor. And, the State of Indiana by Mr. T. A. Shula. Gentlemen, are we ready for trial?
>
> MR. SHULA: The State is ready, Your Honor.
>
> THE COURT: Is the Defendant ready?
>
> MR. CONNOR: No, we are not ready, Judge.
>
> THE COURT: State your unreadiness.
>
> MR. CONNOR: As I mentioned earlier today, Mr. Nation has refused to pay me the balance of my fee, although he has the money, or at least has told me that he has the money. And, has asked that I withdraw so that he can proceed Pro Se.

*THE COURT* : Okay.

*MR. CONNOR* : And, I would respectfully ask the Court to let me do just that. It would be virtually impossible for me to continue under these circumstances

. . . .

*THE COURT* : I'm not sure. Mr. Nation, what is your position?

*MR. NATION* : Yes, sir. I feel as though to pay the man for a job that he said that he doesn't feel as though he could help me on much. And, just like he said, I refuse to pay him. And, I told him that I can go . . . come up here and go to jail myself. I don't need to pay him. I'm not pleading guilty to nothing. I don't feel as though I'm guilty of anything. And, it's just like, I've been in construction all my life. And, if I tell a man that I can't do the job, he's not going to pay me to do it.

*THE COURT* : Are you aware of the fact that Mr. Connor has been a member of the bar of this Court for more than twenty (20) years?

*MR. NATION* : Yes, sir.

*THE COURT* : He is a former deputy prosecutor.

*MR. NATION* : I didn't know that. I knew that he's been a member of the Bar Association.

*THE COURT* : Okay. Do you know that he's had a substantial number of Jury Trials.

*MR. NATION* : Yes Sir.

*THE COURT* : Do you know that he's considered to be one of the most competent lawyers in this town?

*MR. NATION* : That's why I hired him in the first place.

*THE COURT* : But you seriously believe that you would rather proceed Pro Se? That you would rather represent yourself?

*MR. NATION* : The man told me that he didn't honestly think that he could help me out. And, therefore, I don't feel as though I should pay him. Therefore, I don't feel as though he should represent me.

*THE COURT* : Do you understand the jeopardy in which you would be placing yourself by asking me to remove Mr. Connor from the case?

*MR. NATION* : I feel as though the Court can give me a just trial with him and a just trial without him.

*THE COURT* : Are you aware of the fact that there are certain technical rules of evidence, while not a mystery or secret to the rest of the world, usually takes a substantial amount of time to learn those technical rules of evidence. And know when, in fact, any information has been introduced to which an objection should be made?

*MR. NATION* : I'm aware that it takes a large amount of education to conduct the proper court room procedure.

*THE COURT* : Excuse me.

*MR. NATION* : I'm aware of the fact that it takes a lot of education to conduct the proper court room procedure. I'm aware of this.

*THE COURT* : Are you aware of the fact that a Defense lawyer's duty is not to guarantee a not guilty verdict from the point of the defendant. . .

*MR. NATION* : Yes, I know.

*THE COURT* : . . . but his duty is to insure that a fair trial takes place. That all rules of evidence be observed. And, that the defendant be given all of his constitutional rights. Are you aware of that?

*MR. NATION* : I'm aware of that, but when they tell you that they don't think that they can help you. That they figure you are going to jail anyway, then why pay them to defend you?

*MR. CONNOR* : May I interrupt?

*THE COURT* : Just a minute. Go ahead, Mr. Connor.

*MR. CONNOR* : I would like to state for the record that I did not tell the gentleman that. This morning, when I asked for the balance of my fee, he said "Can you guarantee anything?" That's when the problems started. When I told him that I couldn't. I just wanted that for the record.

*THE COURT*: He asked you for a guarantee, and under the Cannons [sic] of Ethics, you refused to give it to him.
*MR. CONNOR*: Yes sir. That's correct.
*Record* at 69–74.

Thereafter the trial court granted Nation's request to proceed pro se but ordered Connor to remain in a stand-by capacity.

The trial court found Nation guilty of the two counts of promoting prostitution (counts I and II) and not guilty of contributing to the delinquency of a minor and intimidation (counts III and IV).

## ISSUES

Nation raises four issues:

1. Did the trial court err in granting his morning-of-trial request to proceed pro se?
2. Did he knowingly, voluntarily, and intelligently waive the right to counsel?
3. Was the evidence sufficient to support the verdict on count I?
4. Must the conviction be reversed under the principle of collateral estoppel?

## DECISION

### I.

*PARTIES' CONTENTIONS*—Nation argues that the trial court should have denied his request to proceed pro se because the request was neither clear nor timely. The State responds that the court properly exercised its discretion in granting the request.
*CONCLUSION*—The court did not err in granting Nation's morning-of-trial request to proceed pro se.

The sixth amendment to the Constitution guarantees a criminal defendant the right to represent himself at trial if he so requests. *Faretta v. California*, (1975) 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 462; *Russell v. State*, (1978) Ind., 383 N.E.2d 309; *Owen v. State*, (1978) Ind., 381 N.E.2d 1235. The defendant's request, however, must meet two conditions. *First*, it must be clear and unequivocal; and *second*, it must be

made within a reasonable time before the first day of trial. *Russell, supra.*

The Indiana Supreme Court discussed the need for a clear and unequivocal request in *Russell, supra.* The court explained that "[h]alf-hearted expressions of dissatisfaction with counsel and general references by the defendant to self-representation, such as those in *Anderson* [*v. State*, (1977) 267 Ind. 289, 370 N.E.2d 318] would fail to meet this requisite." 383 N.E.2d at 313. The defendant in *Anderson* wished to procure private counsel rather than be represented by his court-appointed attorneys. His only reference to self-representation had been at the arraignment, when he said, " 'I would rather represent myself if I can't get no lawyer.' " 267 Ind. at 293, 370 N.E.2d at 320. Here, by contrast, Nation voiced a desire neither to procure new counsel nor even to share the duties of trial advocacy with Connor. Throughout a lengthy discussion of the matter, Nation remained firm in his desire to represent himself. Nation's assertion of the right to proceed pro se was sufficiently clear and unequivocal to pass muster.

The *Russell* court also considered the need for a timely request, expressing the belief that morning-of-trial assertions are per se untimely. The court concluded that "[a]ny self-representation request made the day of trial or later may be summarily denied, for *self-representation after this point is completely a matter of the trial court's discretion.*" 383 N.E.2d at 315 (emphasis supplied). Because the record establishes that Nation was adequately advised of the risks of self-representation (*see* Issue II), the trial court did not abuse its discretion in granting his morning-of-trial request.

### II.

Having determined that Nation properly asserted his right of self-representation, next to be considered is Nation's contention that he did not knowingly, voluntarily, and intelligently relinquish his right to be represented by an attorney.

*CONCLUSION*—Nation knowingly, voluntarily, and intelligently waived the right to counsel.

It should be emphasized that the right of self-representation, no less than the right to assistance of counsel, is of *constitutional* dimension. *Faretta, supra; Russell, supra; Owen, supra; Wallace v. State,* (1977) 172 Ind.App. 535, 361 N.E.2d 159. It is true that before permitting an accused to conduct his own defense, the trial court must satisfy itself that the decision to waive counsel has been made knowingly, voluntarily, and intelligently. *Id.* The Supreme Court in *Faretta* explained the policy behind requiring a competent waiver of counsel:

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. *Johnson v. Zerbst,* 304 U.S. [458] at 464–465 [58 S.Ct. 1019 at 1023, 82 L.Ed. 1461]. Cf. *Von Moltke v. Gillies,* 332 U.S. 708, 723–724 [68 S.Ct. 316, 323, 92 L.Ed. 309] (plurality opinion of Black, J.). Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, *he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." Adams v. United States ex rel. McCann,* 317 U.S. [269] at 279 [63 S.Ct. 236 at 242, 87 L.Ed. 268].

422 U.S. at 835, 95 S.Ct. at 2541. (emphasis supplied) *See also Hatcher, supra; Russell, supra; Owen, supra; Wallace, supra.* It is also true that this knowing, voluntary, and intelligent waiver must appear in the record. *Hatcher, supra; Russell, supra.* The record in this case, far from being silent, shows that Nation, recognizing both his right to counsel and the consequences of waiving that right, chose to dispense with the assistance of an attorney.

The record discloses that Nation hired counsel of his choice immediately after the information was filed. He was represented by counsel at every stage of the proceeding against him. Indeed, attorney Connor appeared in court on the day of Nation's trial, thereby obviating any need for the trial court to advise Nation of his right to counsel, a right of which he was plainly aware. It is illogical to insist that the trial court explicitly advise an accused of the right to counsel when circumstances give a clear indication of his awareness of that right. And cases such as *Smith v. Lane,* (7th Cir. 1970) 436 F.2d 767, do not support a contrary conclusion. The defendant in *Smith,* an indigent, was never informed of his right to court-appointed counsel. Thus, he was without an attorney at *any* state of the proceeding. Nation, by contrast, hired and fired no fewer than two lawyers, one of whom represented Nation at every stage. And because Nation made no claim of indigency, there was no need for the court to inform him of entitlement to court-appointed counsel. Indeed, Nation, although able to pay Connor, refused to do so because Connor declined to guarantee Nation's acquittal.

The record also sustains the conclusion that Nation was adequately advised of the possible consequences of his decision. The record indicates that Nation attended college, thereby supporting the inference that he was literate and capable of making the decision to manage his own defense. Furthermore, the trial court warned Nation that his defense might be impaired if he undertook to conduct it himself; that he would be bound by technical rules with which he was unfamiliar; and that by his decision he would forego the services of an attorney charged with assuring that he receive the fullest possible defense. The trial court provided additional protection by appointing stand-by counsel to assist Nation. As the Indiana Supreme Court said in *German v. State,* (1978) 268 Ind. 67, 73, 373 N.E.2d 880, 883, "the court's appointment of standby counsel is the recommended procedure to preserve defendant's rights when he elects to represent himself." In sum, Na-

tion, having been "made aware of the dangers and disadvantages of self-representation," effectively waived counsel. *Faretta, supra.*

### III.

*PARTIES' CONTENTIONS*—Nation argues that the State did not establish one of the elements of the offense of promoting prostitution by "knowingly or intentionally entic[ing] or compel[ling] another person to become a prostitute[.]" *Ind.Code* § 35–45–4–4(1).[1] Specifically, he maintains that the evidence fails to show that he enticed or compelled Longworth to *become* a prostitute, at best establishing that he induced her to *remain* a prostitute. The State says that the evidence was sufficient.

*CONCLUSION*—The evidence was sufficient to support the verdict on count I.

In reviewing the sufficiency of the evidence, we neither weigh the evidence nor judge the credibility of the witnesses. We examine only the evidence most favorable to the State along with all reasonable inferences to be drawn therefrom. When there is substantial evidence of probative value supporting the verdict, the conviction will not be set aside. *Jones v. State*, (1978) 268 Ind. 640, 377 N.E.2d 1349; *Johnson v. State*, (1981) Ind.App., 419 N.E.2d 232.

Nation's finely honed argument distinguishing between "becoming" as opposed to "remaining" a prostitute is contrary to the entire thrust of the statute relating to the promotion of prostitution. The word "become" as used in this context clearly connotes "act as" regardless of any prior history of prostitution. The evidence adequately demonstrates that Nation encouraged or forced Longworth to become a prostitute.

### IV.

*PARTIES' CONTENTIONS*—Nation claims that because he was found guilty of promoting prostitution (counts I and II) on the basis of the same facts upon which he was found not guilty of contributing to the delinquency of a minor (count III), the doctrine of collateral estoppel should apply to invalidate his convictions. The State responds that the doctrine has no application here.

*CONCLUSION*—The conviction is not reversible under the principle of collateral estoppel.

In general, the principle of collateral estoppel

> finds application when a particular *issue is adjudicated and then is put into issue in a subsequent suit* on a different cause of action between the same parties or those in privity with them. When this happens the former adjudication of the issue is held to bind the parties or privies of the subsequent suit. *See Town of Flora v. Indiana Service Corp., supra* [222 Ind. 253, 53 N.E.2d 161]; *In re Estate of Nye, supra* [157 Ind.App. 236, 299 N.E.2d 854]; *Mayhew v. Deister, supra* [144 Ind. App. 111, 244 N.E.2d 448]. *See also* Restatement (Second) of Judgments § 68 (Tent. Draft No. 1, 1973).

*State v. Speidel*, (1979) Ind.App., 392 N.E.2d 1172, 1175 (emphasis supplied). *Accord, South Bend Federation of Teachers v. National Education Association*, (1979) Ind. App., 389 N.E.2d 23.

As the quoted language suggests, the doctrine contemplates successive prosecutions rather than verdicts of guilt and innocence rendered in a single trial. And recent

---

1. *Ind.Code* § 35–45–4–4 provides:

    A person who:
    (1) Knowingly or intentionally entices or compels another person to become a prostitute;
    (2) Knowingly or intentionally procures, or offers or agrees to procure, a person for another person for the purpose of prostitution;
    (3) Having control over the use of a place, knowingly or intentionally permits another person to use the place for prostitution;

    (4) Receives money or other property from a prostitute, without lawful consideration, knowing it was earned in whole or in part from prostitution; or
    (5) Knowingly or intentionally conducts or directs another person to a place for the purpose of prostitution; commits promoting commits promoting prostitution . . . .

supreme court decisions indicating that the doctrine may apply to verdicts returned in a single trial involved multiple counts of the *same* offense, not, as in this case, multiple counts of different offenses. *Grimm v. State*, (1980) Ind., 401 N.E.2d 686; *Hutcherson v. State*, (1978) Ind., 380 N.E.2d 1219. This is not a proper case for invoking the doctrine of collateral estoppel. The trial court did not err in finding Nation guilty of counts I and II and not guilty of count III.

For the foregoing reasons the judgment of conviction should be affirmed.