FITZGERALD *v* STATE OF INDIANA

[No. 569S113.  Filed April 21, 1970.  No petition for rehearing filed.]

*Palmer K. Ward,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, and *Aaron T. Jahr,* Deputy Attorney General, for appellee.

PER CURIAM—This is an appeal brought by appellant, Robert E. Fitzgerald, from a conviction in the Morgan Superior Court for the crime of theft, to-wit: knowingly, unlawfully and feloniously obtaining and exerting unauthorized control over the property of another. The affidavit under which appellant was charged was filed pursuant to the provisions of Ind. Ann. Stat. § 10-3030 (1969 Supp.) which provides in pertinent part that:

> "Theft in general.—A person commits theft when he (1) knowingly:
> (a) obtains or exerts unauthorized control over property of the owner; or . . . and . . . intends to deprive the owner permanently of the use or benefit of the property . . ."

Trial was had by jury and upon a finding of guilty, appellant was sentenced to the Indiana Reformatory for an indeterminate period of not less than one nor more than five years.

At the conclusion of the trial, appellant filed a timely motion for a new trial which motion was overruled by the trial court. It is from the overruling of this motion that appellant appeals. In his brief appellant raises, as the sole assignment of error the following question of law: Was appellant forced to go to trial without counsel in violation of his constitutional right to the assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution which is made applicable against the states through the due process clause of the Fourteenth Amendment, and Article 1, Section 13 of the Indiana Constitution? The question presented is a

unique one touching on one of the most fundamental of all constitutional rights. An examination of the record below reveals the following chronology of events.

The affidavit was filed on September 23, 1967, and appellant was arrested on the same day pursuant to a bench warrant issued to the sheriff of Morgan County. Appellant was bailed pending trial. On April 16, 1968, the appellant filed a verified motion for a change of venue from the judge which motion was granted by the court. Judge Edwin Long, Judge of the Green Circuit Court, was selected as Special Judge to try the cause and assumed jurisdiction accordingly on April 23, 1968.

On June 25, 1968, the appellant filed a motion for a continuance of the cause which was granted by the court. The case was assigned for jury trial on September 25, 1968 at 9:30 A.M. Five days before the trial on motion of the State of Indiana, the trial date was vacated and was scheduled to be reset at a later date. No reason for the State's motion for further delay of the trial is apparent from the record.

On October 12, 1968, the attorney for the appellant filed a motion to withdraw his appearance for the appellant in the case "for the reason that the defendant has failed to cooperate with his attorney in the preparation of his case." The court granted the attorney's motion and, since the appellant was then without counsel, it ordered him to appear on November 7, 1968, in the Morgan Superior Court for the purpose of making final arrangements for the trial.

On that date the appellant appeared in court in person and without counsel, and *was advised and agreed* that the cause would be set for trial by jury on January 13, 1969. The events which transpired between November 7, 1968, and January 13, 1969, appear from the following portions of the transcript taken on the first day of the trial on January 13th.

"The number is S 67 S 716 and S 67 S 26, both entitled State v. Robert J. Fitzgerald—this case has been set for trial at this time—is the State of Indiana ready?

Mr. Richard Bray: The State of Indiana is ready Your Honor.

By the Court: Mr. Fitzgerald are you ready for trial in this matter?

Mr. Robert Fitzgerald: I believe so if my lawyer is here Sir.

By the Court: Who is your lawyer?

Mr. Robert Fitzgerald: Frank Tucher.

By the Court: Mr. Tucher has never appeared in this case. Now the State, of course expected,—or the court expected to know where he was this morning?

Mr. Robert Fitzgerald: I believe he said he had a jury trial.

By the Court: Well, Mr. Tucher has never appeared for you—he has never contacted the court in anyway. Now Mr. Fitzgerald I call your attention to November the 7th, 1968 at two thirty P.M. at which time you were personally here in this court along with the prosecuting attorney and this case was set for trial and was continued until—because of the fact that your attorney withdrew his appearance—this is Mr. Prince.—

Mr. Robert Fitzgerald: Yes Sir.

By the Court: Your former attorney withdrew his appearance for you and at that time by agreement of the parties the case was set for trial on January the 13th, 1969,—is that not true?

Mr. Fitzgerald: Yes Sir.

By the Court: Now at that time you told the Court that you were contacting an attorney that afternoon and he would get in touch with me immediately, is that not true?

Mr. Fitzgerald: Yes Sir—I contacted a lot of lawyers—

By the Court: Has any attorney appeared for you of record? Since that time?

Mr. Fitzgerald: I have talked to three lawyers and couldn't get none of them to come down here and represent me.

By the Court: Well perhaps I am not making muself (sic) clear to you—Do you know of any attorney that has appeared of record for you? Since that date that is?

Mr. Fitzgerald: No, there is not Sir.

By the Court: Well, the court wrote you on November 25, 1968 pointing out again that these cases were set for trial of January the 13th, 1969 and that you had re-

quested a trial by jury. Court advised you at that time that no attorney had appeared for you and asked that you get in touch with the court promptly and you did not do so—is that true?

Mr. Fitzgerald: Well the letters went to my parents house and I don't get over to my parents house very often.—

By the Court: Well, you didn't contact the court?

Mr. Fitzgerald: No Sir.

By the Court: And then again on December the 18th, as Special Judge in this case, I again wrote you of your agreement of a jury trial on January the 13th, and that you had requested a jury and that no attorney had still appeared for you and I had heard no word from you or any attorney on your behalf, isn't that true?

Mr. Fitzgerald: Yes Sir.

By the Court: And after receiving the second letter you still did not contact the court in anyway?

Mr. Fitzgerald: Well as I pointed out Sir, the mail has been going to my parents house and I live at 3229 Lions Street, and I don't get over to my parents house very often?

By the Court: Well, let me asked you this Mr. Fitzgerald?

Mr. Fitzgerald: Yes Sir.

By the Court: When you were here in court on November the 7th, 1968 I asked you for your address and you gave me the address of 2754 Fultz Street, Indianapolis, Indiana, did you not?

Mr. Fitzgerald: That is my parents house which I could be reached at.

By the Court: And I asked you for a telephone number and you gave me the number 241-6251—did you not?

Mr. Fitzgerald: Yes Sir.

By the Court: Did you know that I had made two attempts to call that number and nobody answered and I had made two other attempts to call that number and some lade (sic) answered the phone and said that she would advise you promptly to get in touch with the court and that I didn't receive any reply, response in anyway from you or an attorney in your behalf?—Isn't that true?

Mr. Fitzgerald: Well, I don't get over to my parents house very often.—

By the Court: But is that true as far as you know?

Mr. Fitzgerald: As far as I know it is, Yes Sir.

By the Court: You al (sic) got word that I had called the home there?

Mr. Fitzgerald: Yes Sir.

By the Court: And still did not get in touch with the Court until this morning?

Mr. Fitzgerald: Well, my employer tried to—

By the Court: Isn't this the first time Mr. Fitzgerald that you and I have talked or had any correspondence in anyway—since November the 7th, 1968.

Mr. Fitzgerald: This is the first time, yes sir.

By the Court: And isn't it also true that I wrote you again on December the 30th, 1968, pointing out to you that I had not had the courtesy of any reply to my former phone calls or my previous letters, pointing out to you again that no attorney had appeared for you, and by agreement of yourself, this case was set for trial on January 13th, 1969, isn't that true?

Mr. Fitzgerald: I believe so Sir.

By the Court: And then again on January the 7th, I recapitulated all this in a letter to you and still did not receive any reply from you or any attorney on your behalf, isn't that true?—Would you like to see my copies of these four letters I referred to?

Mr. Fitzgerald: Yes Sir.

By the Court: All right. (Mr. Fitzgerald examines letters) The copies of the four letters you have just inspected, Mr. Fitzgerald, these are true and correct copies as far as you know?

Mr. Fitzgerald: As far as I know, yes Sir.

By the Court: and have had for sometime—you do have a job at this time?

Mr. Fitzgerald: Yes Sir.

By the Court: And have had for sometime?

Mr. Fitzgerald: Yes Sir.

By the Court: How long have you worked steadily?

Mr. Fitzgerald: About a year,—off and on for about two years with the same employer.

By the Court: Well are you blaming the court or the State of Indiana or Mr. Bray, the Prosecuting Attorney because you do not have an attorney here this morning?

Mr. Fitzgerald: No Sir, I am not. I tried to contact three lawyers but I couldn't get nobody to defend me down here. I have tried to get counsel.

By the Court: Well are you going to defend yourself this morning or what are you going to do about this matter?

Mr. Fitzgerald: Well, I don't believe I am legally inclined to represent myself.

By the Court: Well the clerk pointed out to you that at least on two previous occasions, once on November the 7th and then once in one of these letters to you, that it is costing this county some three or four hundred dollars to have this jury brought in, and they are here this morning.

Mr. Fitzgerald: I believe I read a copy of the letter sir.

By the Court: And the court did tell you that, didn't he?

Mr. Fitzgerald: Yes sir—in the letter.

By the Court: Is there anything further you want to say about this matter?

Mr. Fitzgerald: No sir."

At this point the court proceeded to impanel a jury and the trial commenced. The State of Indiana thereupon produced seven witnesses before the jury each of whom was cross-examined by the appellant. While the seventh witness was reciting his testimony from the stand, an attorney appeared for the defendant and by leave of the court, assumed the responsibilities of counsel. He continued in that capacity throughout the remainder of the trial.

It is a well settled principle of law that a defendant charged with a crime is entitled to be represented by counsel. Art. 1, § 13, Constitution of Indiana; *State* v. *Minton* (1955), 234 Ind. 578, 130 N. E. 2d 226; *Hoy* v. *State* (1947), 225 Ind. 428, 75 N. E. 2d 915. It is further settled that a defendant in a criminal trial has a right to have an attorney of his own choice if he is financially able to employ such an attorney. If he is not financially able to do so, it is the duty of the court to select a competent attorney for him at public expense whether he requests it or not. There can be no valid

criminal trial unless a defendant is represented by counsel *if he desires counsel. State* v. *Minton, supra; State* v. *Carroll* (1952), 231 Ind. 126, 106 N. E. 230; *Taylor* v. *State* (1949), 227 Ind. 131, 84 N. E. 2d 580.

Unlike the typical case in which an appellant claims a violation of his constitutional right to counsel, this case involves an appellant who not only has the pecuniary means to hire an attorney but in fact actually sought to retain counsel of his own choosing before trial. We are not dealing with an indigent or unintelligent defendant who because of a lack of funds was tried without the assistance of counsel. Appellant raises no such objection in this appeal and we believe it to be clear from the record that appellant was able to sustain the cost of his own defense.

The absence of counsel in this case is directly attributable to the appellant's own conduct. In view of the fact that almost one and one-half years elapsed between the filing of the affidavit and the commencement of the trial, and in view of the efforts made by the court as described above, it would be unreasonable to fault anyone but the appellant himself for the failure to have the assistance of counsel at his trial. There are many instances in the law in which one may waive a particular right by his own conduct with respect to that right, and were no other considerations present in this case, we would be inclined to characterize the conduct of the appellant as amounting to just such a waiver. Ordinarily courts are unwilling to reward a litigant for his own misconduct,

Notwithstanding the above, in the case at bar we are dealing with no ordinary right but rather with a constitutional right of fundamental importance—the right to the assistance of counsel. Constitutional rights have occupied a sacred position in our legal system and rightfully so. The concepts, principles and rights embodied in both the United States and Indiana Constitutions command the most sensitive protection

the courts can provide. In fact, protection of all constitutional rights is our most solemn duty.

Recognizing this duty, both this court and the U.S. Supreme Court have insisted that constitutional rights may not be waived except by the appellant himself, knowingly intelligently and understandingly. A heavy burden is borne by the state whenever it is claimed or alleged that a constitutional right of a defendant has been waived. A silent record is not enough *Miranda* v. *Arizona* (1966), 384 U. S. 436, 16 L. Ed. 2d 694; *Gideon* v. *Wainwright* (1963), 374 U. S. 335, 9 L. Ed. 2d 799; *Carnley* v. *Cochran* (1962), 369 U.S. 506, 8 L. Ed. 2d 70; *State* v. *Minton, supra.*

We believe the record in this case reveals that appellant desired to be represented by counsel at his trial and that by his own words, he did not desire to waive his right to counsel nor to proceed with the trial without such assistance. Thus when appellant was asked by the court whether he was going to defend himself he replied, "I don't believe I am legally inclined to represent myself." Clearly the constitutional mandate that the state bear the heavy burden of proving that waiver of the right to counsel is made intelligently and understandingly is not in issue in this case, nor does the appellee, State of Indiana, assert that it is.

The issue before this court is reduced to the question of whether the trial court, under the facts and circumstances of this case, erred in proceeding with the trial in view of the fact that appellant was without counsel at the outset thereof. Although we do so very reluctantly, we are constrained to hold that it did.

What appears to us from the record is a determined effort on the part of appellant to avoid being tried at all and to bring about delay and disruption of the criminal proceedings through his own inaction. The trial judge in this cause made every effort to treat appellant justly and to insure that. he was aware of his rights and obligations with regard to his

upcoming trial. It is a rarity indeed for a trial judge to do as much as the one in this case did to promote and protect the rights of the defendant before a criminal trial. As is indicated by the record, the judge wrote four letters and made two telephone calls to the appellant reminding him of the date of trial and asking him for the name of his counsel. The judge repeatedly reminded appellant that it was imperative that his attorney file an appearance as soon as possible. The response received by the judge from appellant in each instance,—nothing!

On the opening day of the trial, the trial court had to decide whether to proceed as scheduled notwithstanding the appellant's efforts to avoid the said trial, or to grant a further continuance until such time as the appellant secured the services of counsel. The trial court proceeded with the trial as indicated, and as a result, appellant was without the assistance of counsel until midway through the proceedings.

Although we believe that the conduct of the appellant had reached the point where remedial action by the court was indicated, we believe that the trial judge had other means at his disposal short of proceeding with the trial, with which to deal with the situation in this case. The court, in its judicial discretion, could have appointed an attorney to handle appellant's defense conditioned on the payment of the legal fees by appellant. Alternatively the court could have granted appellant a further continuance to renew his "efforts" in securing a lawyer, such efforts to be inspired by the clear warning by the court that failure to secure such counsel would be deemed an interference with the administration of justice and punishable as contempt. Either one of these actions or a combination of the two by the trial court would seem adequate to bring the appellant to trial.

Proceeding with the trial as occurred in this case, in light of the mandates of the U. S. and Indiana Constitutions and

prior caselaw decided thereunder, was improper, irrespective of how strongly we are convinced that appellant sought to avoid said trial. Without a clear waiver, certain constitutional rights, such as the assistance of counsel, must be afforded the defendant about to be tried. As we have indicated, however, the trial court is not powerless where a defendant attempts to prostitute the system and thwart the ends of justice. In the present case the judgment of the trial court based on such a trial is erroneous and therefore must be reversed. Accordingly, judgment in this cause is hereby reversed with instructions to the trial court to grant appellant's motion for new trial.

Judgment reversed.

Arterburn and Givan, JJ., Dissent.

### DISSENTING OPINION

ARTERBURN, J.—I regret that I cannot concur in the majority opinion in this case for the reason that the result is that this defendant can never be tried if he continues not to get counsel to defend himself. He is able financially to employ counsel and contends that he wants an attorney when he is tried. With a situation like that it leaves the control of the case and the trial of the case entirely in the defendant's hands as to when he wants to get counsel and why he does not for any frivolous reason.

The majority opinion says: "The absence of counsel in this case is directly attributable to appellant's own conduct." Almost a year and a half elapsed between the time of arraignment and the date of the trial. His counsel came in tardily after the trial had started. I think there is a reasonable limitation as to what extent a defendant may trifle with the court. In my opinion, this type of case makes the courts appear ridiculous and the laughing stock of the public. Here the trial judge extended the defendant every opportunity to secure counsel, and his actions should be affirmed. I therefore dissent.

GIVAN, J., Concurs.

NOTE—Reported in 257 N. E. 2d 305.