**Kenneth E. HARDY, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee.**

**No. 2–1280A418.**

Court of Appeals of Indiana,
Second District.

June 23, 1982.
Rehearing Denied July 26, 1982.

Susan K. Carpenter, Public Defender, David P. Freund, M. E. Tuke, Deputy Public Defenders, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

Kenneth E. Hardy was convicted of theft, a Class D felony. I.C. 35–43–4–2 (Burns Code Ed. Repl. 1979). Upon appeal he argues that:

I.   He was indigent and was erroneously forced to trial without assistance of counsel;

II.   The evidence was insufficient;

III.   The trial court considered erroneous statements of fact in the pre-sentence report and did not permit defendant to controvert those misstatements;  and

IV.   The prosecution failed to disclose to defendant certain information about one of its witnesses which might have permitted impeachment and failed to disclose certain information concerning photographic exhibits.

We affirm.

## I.

Although Hardy asserted a claim to indigency late in the pretrial proceedings (three days before trial) the evidence before the court was subject to a contrary conclusion. Consistent with *Moore v. State* (1980) Ind., 401 N.E.2d 676, the trial court considered the defendant's total financial picture including his assets, income, debts and

liabilities. The court was within its discretion in finding Hardy not to be an indigent.

■ The appellant's more basic claim is that contrary to *Fitzgerald v. State* (1970) 254 Ind. 39, 257 N.E.2d 305, he was compelled to proceed to trial without counsel despite the stated desire to be represented and without having waived the right to assistance of counsel. The defendant appeared for arraignment without counsel on November 20, denied indigency, stated his intent to employ counsel, and agreed to a trial date of February 13. On January 25, the defendant again appeared, did not have counsel, but still denied indigency, and advised the court that he would have counsel for the February 13 trial. The trial court at this juncture pointedly warned Hardy as to his obligation to obtain counsel.

Hardy appeared again on February 11. At that point the defendant claimed business financial difficulties, but stated that he had averaged five hundred dollars ($500.00) per week personal income since the previous June, and had thirteen hundred dollars ($1,300.00) in the bank. The court over the State's objection granted a continuance of the trial scheduled for February 13. The trial was reset for May 5, 1980.

On May 2, 1980 defendant again appeared and acknowledged that the trial court had previously warned him as follows:

"[A]lthough it's undisputed that you have the right to a lawyer, the person who is able to hire his own lawyer has the responsibility for doing so, and assumes any handicap that results from failing to make diligent effort to do so."

Hardy, however, pleaded additional business reversals and a present financial inability to retain private counsel. In denying a further continuance, the trial court indicated that Hardy, by his own conduct had waived the right to counsel. Hardy proceeded to trial on May 5, 1980 without representation by counsel.

Pointing to the warning given by the trial court on January 25, the continuance granted on that date, and to an additional warning given Hardy on February 11, the State contends that the requirements of *Fitzgerald v. State, supra*, 257 N.E.2d 305, have been met and that we should not reverse on the authority of that case. We agree.

Although the trial court here did not adopt one of the alternatives permitted by *Fitzgerald*, i.e. appointment of a defense attorney conditioned on the payment of legal fees by Hardy, the court did effect substantial compliance with the other *Fitzgerald* alternative. The court granted Hardy a continuance to "renew" his efforts to obtain counsel coupled with a strong warning. We do not deem the trial court's failure to include a contempt punishment possibility within the warning to be fatal.

Under the circumstances here present, Hardy's constitutional right to assistance of counsel was not denied. *U.S. v. Fowler* (5th Cir. 1979) 605 F.2d 181, *cert. denied*, 445 U.S. 950, 100 S.Ct. 1599, 63 L.Ed.2d 785.

## II.

■ The evidence discloses that on July 23, 1979, Hardy entered the Ayr-Way branch of the Purdue National Bank in Lafayette, Indiana. The defendant was known by two of the tellers in the bank, Anita Green and Donna Howard. The defendant spoke to Anita and Donna while at the bank, but did not go to the window of either of his acquaintances; rather, he went to the window of Joyce Wing.

The defendant presented to Joyce Wing a check drawn by Texas Eastern Transmission Corporation to John Thomas in the sum of one hundred and fifty-four dollars and sixty cents ($154.60). Joyce Wing cashed the check for the defendant. The branch manager, Ronald Hurrt, had also identified the defendant while the defendant was in the bank cashing the check, recognizing him from past transactions. One of the employees pointed out to Mr. Hurrt that the defendant had cashed a check using a different name.

During the time the defendant was cashing the check, surveillance cameras took pictures of the defendant at twenty second intervals. Joyce Wing identified the de-

fendant in those photographs, and the photographs were exhibited to the jury at trial.

John Thomas testified that he was an employee of Texas Eastern, that he had been owed a reimbursement from them in the approximate amount of the check, that he had not received the reimbursement at the time the defendant presented the check and that he had not presented the check nor authorized the defendant to present the check.

The evidence of Hardy's guilt is overwhelming.

### III.

■ Appellant contends that a conclusion stated by the Probation Officer in the presentence report was inaccurate. The statement that Hardy "has been in trouble since 1962 on a regular basis, and he has been in trouble almost everywhere he has been" is warranted by the supplemental record before us on certiorari. This record reflects some six prior offenses ranging from burglary in 1962 in South Bend to forgery in Fort Wayne, to assault and battery in Lafayette and unlawful dealing in a controlled substance, also in Lafayette. Such record is ample evidence that Hardy had been in trouble on a regular basis at various locations.

■ Hardy also contends that he was not afforded an opportunity to contest the conclusory statement of the probation officer but does not contest the underlying basis for that conclusion as contained in the supplemental record. Hardy does not show that had he been afforded the opportunity to do so at or prior to the sentencing hearing he could have done so. He has therefore failed to disclose any prejudice.

### IV.

■ Officer James Morris of the Lafayette Police Department investigated the incident in question. His testimony at trial related exclusively to the interview statements taken from bank employees who observed the crime and to the photographic display to these employees which resulted in reaffirmance of defendant's identification. It is Hardy's position that because prior to trial Morris had been suspended from the Police Department and that charges were pending against him, such information may have been used for impeachment purposes. Hardy concludes that the State's failure to disclose these facts requires reversal.[1]

■ We need not consider the argument. The assertion is made for the first time in the unverified Motion to Correct Errors. That Motion is not accompanied by affidavit or other exhibit which would support the naked allegation of Officer Morris' suspension or that charges were pending against him.

■ Appellant's final argument concerns photographs taken by bank surveillance cameras during the occurrence. Though conceding that the State disclosed the existence of those photographs, Hardy somewhat unspecifically asserts reversible error for failure of the State to disclose the specific time and place within the bank that the photographs were made. The State's disclosure that the photographs were taken "at the time of the crime" was wholly adequate. Hardy's belated claim of some confusion between those photographs and the photographs used by Officer Morris to obtain identification verification does not alter our opinion.

The judgment is affirmed.

BUCHANAN, C. J., concurs.

SHIELDS, J., dissents with opinion.

SHIELDS, Judge, dissenting.

I dissent.

With all due respect to the majority's reliance on *U.S. v. Fawler*, (5th Cir. 1979) 605 F.2d 181, *cert. denied*, 445 U.S. 950, 100 S.Ct. 1599, 63 L.Ed.2d 785, I agree with the approach of our own supreme court in *Fitz-*

---

1. We note in any event that such matter would not be a proper subject for impeachment. *See Swan v. State* (1978) 268 Ind. 317, 375 N.E.2d 198; *Banks v. State* (1976) 265 Ind. 71, 351 N.E.2d 4.

*gerald v. State*, (1970) 254 Ind. 39, 257 N.E.2d 305. In *Fitzgerald* the supreme court was faced with an identical situation: a defendant who did not desire to waive his right to counsel or proceed to trial without such assistance and yet made

"[a] determined effort . . . to avoid being tried at all and to bring about delay and disruption of the criminal proceedings through his own inaction."

257 N.E.2d at 311. In reversing the trial court's action in proceeding with the trial when the defendant was without counsel at the outset, the supreme court stated:

"Although we believe that the conduct of the appellant had reached the point where remedial action by the court was indicated, we believe that the trial judge had other means at his disposal short of proceeding with the trial, with which to deal with the situation in this case. The court, in its judicial discretion, could have appointed an attorney to handle appellant's defense conditioned on the payment of the legal fees by appellant. Alternatively the court could have granted appellant a further continuance to renew his 'efforts' in securing a lawyer, such efforts to be inspired by the clear warning by the court that failure to secure such counsel would be deemed an interference with the administration of justice and punishable as contempt. Either one of these actions or a combination of the two by the trial court would seem adequate to bring the appellant to trial.

"Proceeding with the trial as occurred in this case, in light of the mandates of the U.S. and Indiana Constitutions and prior case law decided thereunder, was improper, irrespective of how strongly we are convinced that appellant sought to avoid said trial. Without a clear waiver, certain constitutional rights, such as the assistance of counsel, must be afforded the defendant about to be tried. As we have indicated, however, the trial court is not powerless where a defendant attempts to prostitute the system and thwart the ends of justice."

I perceive these alternatives are effective means of dealing with an obstreperous defendant while at the same time observing our constitutional mandates; further, I find them preferable to the majority's approach of deeming Hardy's conduct as a waiver of his right to counsel when he is vociferously demanding that right.

Further, I disagree with the majority's conclusion the trial court substantially complied with *Fitzgerald* in this case. *Fitzgerald* required the trial court to clearly warn Hardy that his continual failure to secure counsel would be contempt and punishable as such. It did not do so. In addition, when Hardy failed to secure counsel after the warning, the trial court remedy was to find Hardy in contempt and order him confined until he purged himself. This, too, the trial court did not do.

Therefore, I vote to reverse Hardy's conviction and remand this case to the trial court with instructions to grant Hardy a new trial.