**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**CHRIS M. TEAGLE**
Muncie, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOSEPH PENNINGTON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 05A02-1309-CR-823 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE BLACKFORD CIRCUIT COURT
The Honorable Dean A. Young, Judge
Cause No. 05C01-1301-FB-6

**April 23, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Joseph Pennington appeals his sentence for sexual misconduct with a minor as a class B felony. Pennington raises three issues, which we restate as:

I.    Whether the trial court erred in failing to provide Pennington's defense counsel an adequate opportunity to address the presentence investigation report (the "PSI") and present a final argument; and

II.   Whether his sentence is inappropriate in light of the nature of the offense and his character.

We affirm.

FACTS AND PROCEDURAL HISTORY

Pennington, who was a youth leader at a church S.W. attended, had sexual intercourse with and performed or submitted to deviate sexual conduct with S.W. a number of times when she was fifteen years old. On January 4, 2013, the State charged Pennington with three counts of sexual misconduct with a minor as class B felonies. On August 8, 2013, a written plea agreement was filed pursuant to which Pennington agreed to plead guilty to one count of sexual misconduct with a minor as charged and the State agreed to dismiss the other counts. The plea agreement also provided that Pennington's executed time would not exceed eight years. On September 17, 2003, the trial court accepted Pennington's guilty plea and held a sentencing hearing. The court found the facts that Pennington had no prior criminal history and that a long term of incarceration would constitute a hardship on his wife and minor child to be mitigating circumstances. The court also found that Pennington's victimization of the child was continuous, approximating a period of one and one-half years, that he was advised by his pastor early on to discontinue any further involvement with S.W. which involvement began when S.W. was fourteen years of age, that Pennington was a youth pastor for his church where

2

he met S.W., and that fact that his responsibility was to provide religious counseling and guidance for young people to be aggravating circumstances. The court sentenced Pennington to fifteen years with eight years executed in the Department of Correction and seven years suspended to probation. The court later found Pennington to be a sexually violent predator.

## DISCUSSION

### I.

The first issue is whether the court erred in failing to provide Pennington's defense counsel an adequate opportunity to address the PSI and present a final argument. Pennington contends that the trial court committed two errors in conducting the sentencing hearing. First, he argues the court failed to allow defense counsel the opportunity to address the information in the PSI that he believed should not be considered by the court. Specifically, he claims that, while the court stated at one point during the hearing that his request to discuss the information would be addressed at a later point, defense counsel was never given that opportunity. Second, Pennington asserts the court erred in failing to allow his defense counsel to make a final argument at the sentencing hearing, and he requests that we remand for a new sentencing hearing.

The State maintains that Pennington testified about several matters in the PSI, he acknowledged that the factual history of the PSI was accurate, he was given the opportunity to raise any issues that remained immediately before the trial court pronounced its sentence, and he affirmatively declined that opportunity. The State also argues that Pennington declined the opportunity to make argument when offered by the

court and that the court asked whether Pennington had any additional evidence he would like to present, intended to offer any statement in allocution, or raise anything else before the court pronounced its sentence, and Pennington declined. In his reply brief, Pennington argues the court asked if he wanted to make a statement on his own behalf but that this was not the same as permitting his counsel to make a final argument on his behalf.

With respect to the PSI, Ind. Code § 35-38-1-8(a) provides in part that "a defendant convicted of a felony may not be sentenced before a written presentence report is prepared by a probation officer and considered by the sentencing court." The contents of the PSI must be disclosed to the convicted person, and the convicted person should be afforded a fair opportunity to controvert the material contained within the report. Carmona v. State, 827 N.E.2d 588, 598-599 (Ind. Ct. App. 2005). With respect to the final argument, Ind. Code § 35-38-1-5 provides in part that the court "shall afford counsel for the defendant an opportunity to speak on behalf of the defendant" and that "[t]he defendant may also make a statement personally in the defendant's own behalf and, before pronouncing sentence, the court shall ask the defendant whether the defendant wishes to make such a statement."

The record reveals that, prior to accepting Pennington's guilty plea, the court asked defense counsel to establish the facts, and defense counsel questioned Pennington regarding the facts. Following the presentation of the factual basis, the court noted that it had directed the preparation of the PSI and that it had been filed with the court. The court asked Pennington and his counsel "Do you know of any changes of form or other

4

matters that need to be addressed," and defense counsel replied "Well, there is just a couple statements in here that I would ask that the Court not consider." Transcript at 12. The court stated "Okay. We'll take that up, then, during the presentation of evidence," and defense counsel stated "But, uh, but as far as the factual history, it's all accurate." Id. The court asked Pennington if there was anything he wished to present before the court accepted or rejected the plea, and Pennington did not have anything further. The court accepted Pennington's plea of guilty and entered judgment of conviction accordingly.

The court then stated that it would proceed with sentencing and asked defense counsel if he had any witnesses, and defense counsel began by presenting the testimony of Pennington. Defense counsel asked "this is in the [PSI], you've never been in any kind of criminal trouble before, correct," and Pennington replied "None whatsoever." Id. at 15. Defense counsel further stated "this is mentioned in the [PSI], you have, did some counseling at Family Services Society, correct," and Pennington responded affirmatively. Id. at 16. On cross-examination, the State said "We have our statement, it's in the [PSI], but I just want to make sure and hit a couple of points" and then asked about how Pennington knew S.W. Id. at 17. Pennington explained that he and S.W. attended the same church, that he became a youth pastor, and that she was a member of the youth group. In addition to Pennington's testimony, defense counsel presented the testimony of Pennington's wife, his stepfather-in-law, and his brother, and the State presented the testimony of S.W.'s mother, who read a statement prepared by S.W. Following the presentation of testimony, the court asked "Any further evidence you want to present at this time, [defense counsel]," and defense counsel responded "No." Id. at 40. The court

stated "Alright. [] Pennington is entitled to make a statement in allocution. Does he want to say anything at this time before sentence is pronounced," and defense counsel stated "No, sir." Id. The court stated "Nothing else," and defense counsel stated "He doesn't have anything else." Id. The court then found mitigating and aggravating circumstances and sentenced Pennington.

Based upon the record, we cannot say that the trial court denied Pennington or his defense counsel an adequate opportunity to contest any statements in the PSI or to present a final argument. Pennington does not demonstrate any error or that he was prejudiced and is not entitled to reversal of his sentence or a new sentencing hearing on these bases. See Hardy v. State, 436 N.E.2d 837, 840 (Ind. Ct. App. 1982) (holding that the defendant failed to show any prejudice where the defendant argued he was not afforded an opportunity to contest a statement in a presentence report).

II.

The next issue is whether Pennington's sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

In support of his claim that his sentence is inappropriate, Pennington argues that he did not use any weapons in the commission of the offense, the victim appears to have

recovered from the crimes as shown by the fact that her relationships with her parents have been repaired, he had no prior criminal convictions, there were positive statements about him as a father and son-in-law, he showed remorse and apologized to the victim and her family, and he had been gainfully employed throughout his adult life. He requests this court to revise his sentence to the advisory sentence of ten years with six years on electronically monitored home detention and four years suspended.

The State argues that Pennington used his position as a youth pastor at his church to groom and sexually victimize a fifteen-year-old girl, his grooming of her began when she was fourteen, and that despite being told that he was not to have contact with S.W., within two months Pennington was kissing, fondling, and having intercourse with her. The State notes that Pennington had sex with S.W. on ten to twelve occasions at a park, in his car, at his place of employment, and at S.W.'s house, that they had oral sex at least a dozen times, and they exchanged nude photographs via text messages. The State argues that S.W. gave Pennington a "hand job" on a church bus while Pennington's wife was on the bus. Appellee's Brief at 11. The State points to the facts that, as a result of the relationship, S.W. grew estranged from her parents and careless in her schoolwork, she routinely lied about who she was talking to on the phone, she avoided visits with her father because she did not wish to be away from Pennington, her grades suffered, and that, when he finally broke off the relationship, she realized he had been manipulating her. The State points out that S.W. received psychiatric treatment and that the ongoing nature of the sexual predation, the level of manipulation, and the lasting impact on S.W. all show that the nature of the offense is deserving of an enhanced sentence.

7

Our review of the nature of the offense reveals that Pennington met S.W. when she was fourteen and began to attend the youth group where he was a youth pastor. According to the report of the probation department, a neighbor witnessed inappropriate contact between Pennington and S.W., and Pennington was told by the church leadership that he was never to be alone with S.W. Pennington stated that S.W. was fifteen years old when they first had sexual intercourse, and that they had intercourse on "at least ten to twelve occasions," including at his place of employment at the time, in his car, and at S.W.'s house. Appellant's Confidential Appendix at 8. Pennington also stated that he and S.W. "had oral sex 'at least a dozen times,'" and that "there was 'mutual fondling' on numerous occasions." Id. The report also indicated that S.W. gave him a "hand job" in the church van when they, along with several other youths, adults, and Pennington's wife, were in the vehicle traveling home from a concert. Id. Pennington also stated that he and S.W. "sent nude pictures of themselves via text messages . . . ten (10) to twelve (12) times." Id.

S.W.'s mother read a statement prepared by S.W. in which she stated that Pennington was thirty years old when S.W. was fourteen years old, Pennington manipulated her and made her believe they would eventually have a future together, they discussed the number of kids they would have together and their children's names, Pennington was a youth pastor and had a full-time government job, S.W. started to fight with her mother, S.W. avoided seeing her father because she did not want to miss a moment with Pennington, she lied about who she was texting, she stopped caring about her schoolwork and her grades suffered, and that, in hindsight, she was the only one

being truthful with her feelings. S.W. described the impact Pennington had on her and her family and how her relationships with her family and friends have improved dramatically since Pennington has not been in her life, and said she received counseling related to Pennington's involvement with her.

Our review of the character of the offender reveals that Pennington's wife and stepfather-in-law made positive statements about Pennington being a good father to his daughter, Pennington's wife stated she would not be able to meet her household expenses by herself, and that Pennington's brother indicated he was willing to let Pennington work for him if that would help. The PSI indicates that Pennington had no prior criminal convictions, and he apologized to S.W.'s family at sentencing. According to the report of his interview with the probation department, he stated that, shortly after he ended his relationship with S.W., he began an affair with a married woman who also attended his church and was also a youth leader.

After due consideration of the trial court's decision, and in light of the protracted nature of Pennington's sexual relationship with S.W., we conclude that Pennington has not met his burden of showing that the sentence imposed by the trial court is inappropriate in light of the nature of the offense and his character.

CONCLUSION

For the foregoing reasons, we affirm Pennington's sentence for sexual misconduct with a minor as a class B felony.

Affirmed.

VAIDIK, C.J., and NAJAM, J., concur.

9